Carter *vs*. The Cotton States Life Insurance Company.

---

MARTHA CARTER, plaintiff in error, *vs*. THE COTTON STATES LIFE INSURANCE COMPANY, defendant in error.

A policy of insurance provided that the  annual premium was  to be paid by an annual loan of $100 00 and  a cash annual premium of $107 30.   It was conditioned to be void if the  premiums due shall not be paid  at the time stated.   The application declared that the policy should  not be binding until the first premium shall have been received  by the company, during the lifetime and good health of the person insured.   The agent of the company contracted with the insured that the first  year's premium  was to be paid in services to be rendered by the insured to the company as medical examiner, and that if such services exceeded the first  year's  premium, a credit was to be entered for the excess on that of the next.   The insured died during the first year, having rendered service as medical examiner to the time of his death, but the fees did not amount to  the first year's premium :

*Held*, that the  agent of the  company exceeded his authority in  making the contract above stated, and that the beneficiary of the policy was therefore not entitled to recover thereon.

Insurance.   Principal and agent.   Contracts.   Before Judge BARTLETT.   Richmond  Superior Court.   October Term, 1875.

Reported in the decision. .

WILLIAM H. HULL, for plaintiff in error.

BARNES & CUMMING, for defendants.

WARNER, Chief Justice.

This was an action brought on a policy of life insurance for $5,000 00, issued by defendant and made payable to plaintiff,

on the life of her husband, Dr. Flournoy Carter. The policy was dated November 25, 1872, and was delivered to Dr. Carter. Dr. Carter died of pneumonia, July 18, 1873. Notice of death to defendant was shown, and its sufficiency not objected to. The refusal of the company to pay was based on the fact that Dr. Carter had never paid the first cash premium, or given any note for the portion of the first year's premium which was to be a loan.

The case of the plaintiff was, that by an agreement with M. W. Abney, the company's agent who took the risk and delivered the policy to Dr. Carter, the premium for the first year was to be paid by services to be rendered the company, as medical examiner in Augusta; and that Dr. Carter did render such services, whenever called on, until prevented by death.

The clauses of the policy essential to be stated are as follows: "The Cotton States Life Insurance Company, in consideration of the representations for this policy, signed by Flournoy Carter, and dated November 8th, 1872, and numbered as this policy, and an annual premium of $207 30, to be paid on or before the 25th day of November in each and every year from the date of and during the continuance of this policy; which annual premium is to be paid in manner following: an annual loan of $100 00, and a cash annual premium of $107 30, to be paid on the 25th day of November, do assure," etc., (and agrees to pay) the "said sum insured (the balance of the year's premiums on this policy, if any, and also all notes or credits for premiums thereon, and other indebtedness of the insured to this company, being first deducted.")

Conditioned to be void—"If the premiums due on this policy shall not be paid at the times above mentioned, and the interest on all notes or credits for premiums on this policy be paid annually in advance to this company, or its authorized agents."

The following is the essential part of the "application" of the insured referred to in the policy: "It is declared * * *

Carter *vs.* The Cotton States Life Insurance Company.

that the policy of insurance hereby applied for shall not be binding on this company until the first premium, as stated therein, shall have been received by said company, or some authorized agent thereof, during the lifetime and good health of the person therein insured ; and inasmuch as only the officers at the home office of the company in the city of Macon, Georgia, have authority to determine whether or not a policy shall issue on any application, and they act on the written statements and representations referred to, it is expressly understood and agreed that no statements, representations, or information, made or given to the person soliciting or taking this application for a policy, shall be binding on the company, or in any manner affect its rights, unless such statements, representations or information be reduced to writing, and presented to the officers of the company, at the home office, in the application above."

On the back of the application was the following entry, unsigned :

AGENT'S MEMORANDUM—PREMIUM AND SETTLEMENT.

| | | |
|---|---|---|
| Table premium, . . . . . . . . . . . . . . . . . . . . | $ | . . . |
| Less—loan twelve months' note, . . . . . . . . . . | 100 | 00 |
| Balance, . . . . . . . . . . . . . . . . . . . | 107 | 30 |
| Policy fee and stamp, . . . . . . . . . . . . . . . | 1 | 00 |
| First cash payment, . . . . . . . . . . . . . . . . . | $108 | 30 |

It was proved, on the part of the plaintiff, that Abney was the agent of the defendant for taking risks in Augusta ; that the agreement above stated was made between him and Doctor Carter ; and that Doctor Carter did, in pursuance of the agreement, examine a number of applicants for insurance ; also, that Doctor Ford, after Doctor Carter was taken sick, examined several for him and for his benefit.

The fees for these examinations, however, did not amount to the first year's premium.

There was a variance between witnesses as to one point of this agreement. The plaintiff, stating what her husband had told her, confirmed by what Abney told her, said that the

year's services were to go against the year's premium, without regard to their amount.

A witness named Howard, examined by interrogatories at plaintiff's instance, which were introduced by defendant, said it was this : that if the services in a year exceeded the premium, he was to be credited for the excess on next year's premium, and that nothing was said of the contingency of a deficiency. The same witness stated that after the policy was delivered, Abney asked Carter to give a due-bill for the difference between the first year's cash premium and the services already rendered, which Carter refused, saying he meant to hold him to his bargain, upon which Abney said he would make it all right.

Howard also testified that in the spring of 1873, Dr. Carter came to him in an excited manner and showed him a letter from Mr. Obear, which was a dun for the premium. He said witness knew his agreement with Abney, that he was to pay the premium in services, and now they were dunning him and had not even given him credit for the services performed. Witness took the letter and showed it to Abney, who said he was about to send in his report which would make it all right, and sent a message to Carter (which witness delivered) to pay no attention to the letter. The custom of the local agents was, out of $100 00 premium to keep $20 00 for their commissions, to pay $5 to the medical examiner and send $75 00 to Abney. In the cases when Dr. Carter examined, they kept $20 00 for themselves and sent $80 00 to Abney. This witness, Howard, was a sub-agent under Abney, and had brought Abney and Carter together to make the agreement referred to. Abney lived in Edgefield, South Carolina, and had sub-agents in Augusta.

George S. Obear, the secretary of defendant, testified that Abney was the company's agent for South Carolina, with the right to go into any territory ; that he had the same powers as the other agents, which were to receive applications and forward them to the home office; if approved, to deliver the policies and receive the premiums ; that he had no other powers ;

that he had no authority to make such a contract as the one set up by plaintiff; that no custom of this company, or any other, as far as witness knows, authorized agents to receive anything but money for premiums.  The witness, Obear, said that no information as to this alleged agreement was received by the home office until after Dr. Carter's death.  It was the custom of the company, when a policy was issued and sent to the agent, if the return of the premium was not made at the proper time, to write to the person insured and notify him, and if he did not pay to notify him that the policy was avoided.

The paper, of which the following is a copy, was produced by plaintiff, under notice, with the statement that it was received during Dr. Carter's extreme illness, and for that reason was never shown to him:

"MACON, GEORGIA, June 17th, 1873.

"*Mr. Flournoy Carter :*  Please fill up the blank spaces below, referring to your policy in this company, and return and oblige.  If payment has not been made, please state that fact.

"GEORGE S. OBEAR, *Secretary.*

"No.  |  Premium.·  |  Interest.  |  Due.  |  To whom paid.  |  When paid."

"Policy holders are requested to pay promptly on the day premiums become due.  When it is not convenient to pay to authorized agents, payment may be made direct to the company, by check or draft, by post-office order or by express."

This was the form of the one sent in April, 1873, referred to by Howard.

Defendant also read a letter dated July 18, 1873, to Dr. Carter, notifying him that his policy was void.  This letter was not received till after Dr. Carter's death.

The court refused to charge, as requested in writing, by plaintiff's counsel: "That if the agent of the company agreed with Dr. Carter that the premium should be paid in medical services as examiner, and Carter agreed to render such services in consideration of the policy, and Carter did render such services, when called on, until hindered by sickness and death, the policy is binding on the defendant."

The court did charge, at request of defendant, as follows:

1st. An agent of an insurance company, whose agency extends only to procuring applications, forwarding them to the parent office, countersigning and delivering policies, and receiving premiums, has no authority to make a contract of insurance or to modify the terms of a policy.

2d. A recital in the application for insurance (said application being signed by the insured) in the words following, to-wit: "and inasmuch as only the officers at the home office in Macon have authority to determine whether or not a policy shall issue to any applicant," is notice to the applicant that such an agent as the above described has no power to make or modify a contract.

3d. An agent appointed to solicit and forward to the home office applications for insurance; to receive from the home office the policies of insurance, and to countersign them and to receive the premiums which, by the policy, are required to be in cash, whilst he may waive the cash payment, his delivery of the policy without such payment, and without the execution and delivery of the note on account of first premium, would not by itself bind the company. Still less has such an agent authority to make a different contract as to the mode of payment of the premium, and a contract for a premium different in kind and amount.

4th. A contract to receive medical services in lieu of a cash premium without reference to their value in the aggregate, and with no provision for payment of the difference between the value of such services and the amount of the premium, is not merely a waiver of payment of a stipulated sum in cash, but is a contract for a different kind and amount of premium. Such a contract exceeds the powers of such an agent.

5th. If, in the agreement made by Carter with Abney, the former looked to Abney individually, the plaintiff cannot recover of the company.

6th. The policy of insurance, and the application of the insured, are to be construed together as one contract; and if in the application there is a provision that the policy shall

not be binding on the company until the first premium shall have been received, such provision in the application is a part of the policy.

7th. If there was an agreement between Carter and Abney, defendant's agent, that the premium should be paid in medical services, as examiner for defendant, such agreement only bound Abney, individually, and was not binding on the company.

8th. That if the jury believe from the testimony that no note was given by Carter for the loan part of the premium, the policy did not take effect, and was not binding on defendant.

Under this charge the jury found for defendant, and plaintiff excepted and assigns the same as error.

The main controlling question in this case, in view of the foregoing statement of facts, is whether the defendant was bound by the acts of its agent, Abney, in making the contract for insurance, which the plaintiff now seeks to enforce against it. The question is not whether the policy would be binding on the defendant if its agent had given to the insured credit for the payment of the first premium to be paid to obtain the policy, but the question is whether its agent had the authority to bind the defendant by the contract which he did make with the insured, that the premium due on the policy for the first year was to be paid by the insured, by services to be rendered to the defendant as medical examiner in Augusta ; that if his services in a year exceeded the first year's premium, he was to be credited for the excess on the next year's premium. This is substantially the contract which Carter, the insured, made with Abney, the defendant's agent, to obtain the policy now sued on. The general rule is, that the principal is only bound by the acts of his agent when the latter acts within the scope of his authority. To establish the liability of the defendant for the payment of the policy now sued on, the case of Miller *vs.* Life Insurance Company, 12 Wallace's Reports, 285, was cited on the argument by the plaintiff in error. The point decided by the court in that

case was, that where an insurance company instructed its agents not to deliver policies until the whole premiums are paid, "as the same will stand charged to their account until the premiums are received," and the agent did, nevertheless, deliver a policy giving a credit to the insurer and waiving a cash payment, that the company—it being a stock company—was bound for the payment of the policy. The question in that case was, whether the defendant's general agent, under his instructions, could waive the present payment of a cash premium prior to the issuing of the policy so as to bind the company. The question in the case now before us, is not whether the defendant's agent could have waived the immediate or present cash payment of the first premium for a short time, when he issued the policy to the insured, so as to bind the defendant's company, but the question here is, whether the defendant's agent had the authority to make the contract he did with the insured, that the first premium should be paid in services to be rendered as a medical examiner for the defendant, as shown by the evidence in the record, so as to bind the defendant for the payment of the policy? This precise question was decided in the case of the Anchor Life Insurance Company vs. Pease, reported in Bigelow's Life and Accident Insurance R., 4th vol., 215. Although it does not appear from the report of that case that the contract made with the insured that the premium to be paid in services as examining physician, was the first premium due on the policy, still the principles recognized and decided by the court in that case, in respect to the authority of the agent to make such a contract, is as applicable to the first as subsequent premiums. The decision of the court, in the case last cited, appears to be based on sound legal principles as enunciated therein, and for that reason we adopt them, as being applicable to the case before us, in rendering our judgment. The contract made by the insured with the defendant's agent, was of an extraordinary character, not shown to have been customary, or within the scope of the powers of such agents, but on the contrary, the uncontroverted evidence in the record is, that the agent had no authority to

make such a contract; besides, it would seem from the evidence, that the insured must have been aware of that fact when he appealed to the agent, instead of the company, when the latter demanded the payment of the premium from him; and also when the agent demanded his due-bill for the difference between the first year's cash premium and the services then rendered, the insured said he meant to hold him, the agent, to *his* bargain, and refused to give his note.   The payment of premiums in *cash* by the insured in a life insurance company, is an important element in conducting the business of such companies, and if the agents thereof shall be allowed to contract with the insured for the payment of premiums in medical services to be rendered the company, why not be allowed to contract for the payment of premiums in horses and buggies for the agents to travel over the country to procure insurance for the benefit of the company?   The only safe rule is to adhere to the well established principles of the law in all cases where it can be ascertained, though it has been said that hard cases make shipwreck of the law, and that remark is probably quite as applicable to the law governing life insurance contracts as any other.   In the view which we have taken of the contract sued on in this case under the evidence, and the law applicable thereto, the plaintiff was not entitled to recover, and although we think the court did err in some of its charges to the jury, still, the charge of the court being right on the main controlling question in the case, the errors in relation to the other matters complained of are immaterial.

Let the judgment of the court below be affirmed.