## TURNER v. SUPREME LODGE KNIGHTS OF PYTHIAS.

No. 20695. Opinion Filed April 18, 1933.

Rehearing Denied Dec. 12, 1933.

Holcombe & Lohman and H. M. Curnutt, for plaintiff in error.

J. A. Denny and John V. Beveridge, for defendant in error.

McNEILL, J. This case involves an appeal from an order sustaining a motion for a new trial. The parties will be referred to as they appeared in the trial court. The action arose on a policy of life insurance in the sum of $2,000 issued on October 12, 1922, by the Supreme Lodge Knights of Pythias to William P. Grossman, deceased, in consideration of a monthly premium in the sum of $5.20. After the death of the insured, his widow, the beneficiary in said policy, plaintiff in the trial court, plaintiff in error herein, instituted suit against said Lodge to recover on said policy.

Plaintiff alleged in substance that said policy was in force and effect at the time of the death of said decedent by reason of the fact that said policy, after the payment of 36 monthly premiums of $5.20, had a surrender value of $244, and that this surrender value would be applied automatically to the payment of the monthly premiums without any further payments until that surrender value was exhausted. Said plaintiff further alleged that in the month of June, 1925, the insured sold a bull for $35 to Thomas DeWalt, who was the agent of said defendant for the purpose of the collection of premiums, and that said agent agreed at said time to pay said premiums for said insured for a period of seven months from said date; that this amounted to a payment of said premiums thereafter due to the amount of $35. Plaintiff prayed judgment on said policy in the sum of $2,000 and interest.

The defendant answered by general denial and in addition thereto specifically denied that the premiums under said policy

of insurance were paid by the insured for at least 36 consecutive months as alleged by plaintiff. Said defendant also denied the alleged contract made with said agent, and further alleged in its answer that said insured defaulted in the payment of his premiums upon said policy in July, 1925. That said policy was thereafter canceled and said insured was dropped from the rolls of said insurance society for nonpayment of dues. Defendant filed a general demurrer to the amended petition of plaintiff on the ground that the petition failed to state a cause of action. Defendant continued to stress this question by an objection to the introduction of any evidence and by interposing a demurrer to the evidence of plaintiff, on the ground that the same was insufficient to establish a cause of action in favor of plaintiff and against said defendant. At the close of the testimony said defendant moved the court to direct a verdict for the defendant on the same ground. The court overruled all of these contentions and defendant took its exceptions. Defendant renewed these grounds in its motion for new trial and alleged additional reasons for the vacation and reversal of said judgment, including the refusal to give certain requested instructions embodying the same theory presented by said demurrer and request for a directed verdict, and also assigned in said motion the error of the court in giving instructions numbered four and six, which were based upon the allegations of said petition of plaintiff that said agent agreed to pay said premiums. The court sustained said motion for a new trial on the ground of the insufficiency of said petition to state a cause of action against said defendant, and upon the giving of instructions numbered four and six, which were in harmony with the allegations of said petition.

It appears that plaintiff relied on said agreement to recover on said policy in order to maintain her theory that 36 monthly premiums had been paid so as to receive the benefit of the surrender value clause, which would automatically extend the insurance beyond the death of the insured. The agreement as alleged by plaintiff is as follows:

"(5) That on or about June 10, 1925, the said William P. Grossman sold and delivered to Thomas DeWalt one certain bull at the agreed price of $35 and the said Thomas DeWalt thereby became indebted to the said William P. Grossman in the said sum of $35.

"That thereafter, and on the same day, and after the payment of all monthly dues to that date, and while said policy was in full force and effect, the said Thomas DeWalt, who was then and there the duly authorized and acting agent of the defendant for the collection of premiums and solicitation of insurance, entered into an agreement with the said William P. Grossman whereby it was agreed that the indebtedness from the said Thomas DeWalt to the said William P. Grossman should be liquidated by the said Thomas DeWalt paying to the defendant insurance company the premiums which might thereafter become due in favor of the insurance company and against the said William P. Grossman on such certificate of insurance, to the amount of $35. That said amount paid all required premiums on such certificate of insurance up to and including the month of November, 1925, which was more than 36 months after the date of the issuance of said certificate of insurance."

The real question apparently centers around these allegations as to whether the petition alleges facts sufficient in conjunction with the other formal allegations to constitute a cause of action in favor of plaintiff and against defendant. The defendant contends that these paragraphs pleaded purely a personal transaction between the insured and said agent and that said agreement is not binding on the defendant; that before said plaintiff could bind said defendant by said agreement it was necessary that the power and authority of the agent be affirmatively alleged; that he was acting in a representative capacity and within the scope of his authority. The defendant urges that it had no knowledge of any such agreement or transaction; that it did not authorize, acquiesce in, or ratify the same; that it did not at any time waive any of the provisions of said policy relative to the payment of premiums, but at all times after the month of June, 1925, considered said policy as lapsed, and the insured dropped from its membership list; and that the insured was so notified by correspondence from the home office of said defendant.

During the trial said agent, however, testified that he had purchased a bull from the insured some time during the month of January, 1925, for the sum of $35 to reimburse him for premiums which said agent had heretofore advanced for said insured; that said agreement was a different agreement from that as alleged by plaintiff. In short, it is defendant's theory that it was necessary to allege that said DeWalt was acting as the agent of the company in making said purported agreement with the insured on behalf of said defendant, or that said transaction was for and on behalf of defendant,

288

or that said agent had authority to enter into such agreement, or allegations of like import, before said petition stated a cause of action against said defendant.

The contentions resolve themselves into the question as to whether an agreement of an agent of a fraternal beneficial association to pay the monthly premiums of one of its insured members as they fell due in return for the sale and delivery of a bull to said agent of said association who was authorized to collect said monthly premiums for said association, is binding upon said association in the absence of pleading or proof that said agent had authority to make such an agreement or without proof that said defendant knew, acquiesced in, or ratified such agreement. It was pleaded that William P. Grossman, deceased, paid all monthly payments or installments on said certificates and continued to pay these to its duly authorized agent when they became due and payable, and while said policy was in full force and effect, that said DeWalt, who was the duly authorized and acting agent of defendant for the collection of premiums and soliciting of insurance, entered into the agreement aforesaid as alleged by plaintiff with the said William P. Grossman, deceased. There seems to be no dispute as to the payment of 32 monthly premiums. The plaintiff produced receipts of two other payments covering the months of July and August, 1925, showing the signature of the agent DeWalt. A receipt, however, is only prima facie evidence of payment and is rebuttable.

The agent DeWalt denied the signature appearing on said receipts of July and August and contended that the signatures purporting to be his signatures were forgeries. The pleadings alleged that DeWalt was a soliciting and collection agent. There is no evidence that he was a soliciting agent, and there is no evidence tending to show that said DeWalt acted as general agent of the insurance company. His sole duties as shown by the record indicated that he was engaged in collecting the monthly premiums for the defendant. He had nothing to do in reference to accepting risks, or agreeing upon any settlement of the terms of any contract of insurance which were issued by the defendant.

In 32 C. J. sec. 142, p. 1065, a general agent of an insurance company is defined as follows:

"A general agent of an insurance company is generally one who is authorized to accept risks, agree upon and settle the terms of insurance contracts, issue policies by filling out blank instruments which are furnished him for that purpose, and to renew policies already issued, as distinguished from a soliciting agent who merely procures applications, forwards them to some other officer by whom the policies are issued, collects the premiums and delivers the policy."

32 C. J. sec. 142, p. 1065, defines a soliciting agent as follows:

"A soliciting agent is merely a special agent, and as a general rule, has authority only to solicit insurance, submit applications therefor to the company, and perform such acts as are incidental to that power."

There does not appear to be any contention raised in this case that the agent DeWalt was acting in any other capacity than that of the collecting agent. In this connection it is significant to observe that there is a distinction between the power of an agent after a policy has been issued and his power before the issuance of same. It appears to be the general rule that after the policy has been issued his power in so far as it relates to the policy is exhausted. Bliss on Life Insurance, page 487.

It is generally conceded in the conduct of insurance that a soliciting agent has an interest in the first premium due under the policy, and there appears no apparent reason why an agent could not accept in lieu of cash his interest in the initial premium by note or any other thing of value so long as the insurance company is paid the balance of the premium which it claims as its proportionate part, provided an arrangement has been made by the insurance company that such agent is to be remunerated for his services by retaining the first premium or a portion thereof.

In the case of New Jersey Ins. Co. of Newark v. Rowell, 126 S. E. 892, on p. 894, it is said:

"Surely where an insurance policy is regularly issued, and the company receives the full amount of the premium less commissions, the policy will not be rendered invalid and void from the simple fact that the local agent accepted a part of the premium in goods instead of in cash. See Metropolitan Life Ins. Co. v. Thompson, 20 Ga. App. 706, (3) 93 S. E. 299."

A careful review of many cases indicates that the great weight of authority announces the rule that an agreement between the insurance agent and the insured whereby the former accepts personal property in satisfaction of the premium due on the policy does not bind the company in the absence of an

express authorization to accept such personal property in lieu of money for the premium, and that no valid contract arises by such payment in the absence of consent, acquiescence, estoppel, or ratification by the company. See Cohen v. New Zealand Ins. Co., Ltd. (N. J.) 126 Atl. 417; Folb v. Firemen's Ins. Co. of Baltimore (N. C.) 45 S. E. 547; Cooley's Briefs on Insurance (2d Ed.) vol. 1, p. 700, and the following cases cited thereon:

"Such is the doctrine asserted in Hoffman v. John Hancock Mut. Life Ins. Co., 92 U. S. 161, 23 L. Ed. 539; Carter v. Cotton States Life Ins. Co., 56 Ga. 237; Mutual Ben. Life Ins. Co. v. Nicoll, 9 Ky. Law Rep. 719; Texas Mut. Life Ins. Co. v. Davidge, 51 Tex. 244; Tomsecek v. Travelers' Ins. Co., 88 N. W. 1013, 113 Wis. 114, 57 L. R. A. 455, 90 Am. St. Rep. 846." Couch, Cyclopedia of Insurance Law, vol. 3, sec. 602, p. 1948; Couch, Cyclopedia of Insurance Law, vol. 2, section 537, p. 1646, announced this rule:

"On the other hand, an insurance agent ordinarily has no authority to accept anything other than money or an instrument calling for the payment of money for a premium, such as personal property, or professional services, or even to cancel his own indebtedness to the insured, or accept credit for merchandise on his account."

In reference to accepting personal property, Couch cites the following cases: Hoffman v. John Hancock M. L. Ins. Co., 92 U. S. 161, 23 L. Ed. 439. Compare Carlwitz v. Germania F. Ins. Co., Fed. Cas. No. 2, 415a; Pryor v. Gowan, 204 Ala. 257, 85 So. 370 (statutory restriction); Sovereign Camp W. O. W. v. Blanks, 208 Ala. 449, 94 So. 554. Compare New Jersey Ins. Co. v. Rowell, 33 Ga. App. 552, 126 S. E. 892. Compare Van Werden v. Equitable L. Assur. Soc., 99 Iowa, 621, 68 N. W. 892; Cohen v. New Zealand Ins. Co., 100 N. J. Law, 110, 126 Atl. 417; Cyrenius v. Mutual L. Ins. Co., 18 App. Div. 599, 46 N. Y. Supp. 549 (policy stipulated for payment of premium in cash); Bankers R. Life Co. v. Sommers (Tex. Civ. App.) 242 S. W. 258 (contract called for payment in cash). See, also, Briggs v. Collins (Ark.) 167 S. W. 1114; North River Ins. Co. of New York v. Reeder (Tex. Civ. App.) 288 S. W. 257.

Ostander on Fire Insurance (2d Ed.) announced the following rule, sec. 94, p. 295, as follows:

"In the absence of any special agreement, the insurance premium must be paid in money. Unless objected to, currency, or even checks, drafts, or bill of exchange, will constitute payment; but the agent will not be presumed to have authority to accept merchandise on personal account. The distinction between the agent and his principal should be kept in view. The premium on a policy of insurance is the property of the latter, and not of the former. Where the agent delivers a policy to the merchant with whom he has dealings, and to whom he is indebted for goods due for the use of his family, and the premium, by agreement, is placed to the credit of his account, it is a fraud on the principal; and, should a loss occur, the agent having failed to remit, the insurer will not be liable. The agent cannot appropriate to his own use the funds of his principal, without a wrong being done the latter; and when merchandise is accepted in payment, or the premium is applied to pay a debt due to the insured, the latter becomes a party to the wrong, and the company will not be bound."

In the case of Equitable Life Assur. Soc. v. Cole, the Court of Civil Appeals of Texas, 35 S. W. 720, says:

"The doctrine cannot be established that because an agent is authorized to solicit insurance and forward applications for policies, and collect premiums in money, or even accept notes for deferred payments of premiums, he is therefore authorized to accept other kinds of property. The accepting of property in payment of indebtedness by agents authorized to collect is so much aside from the current of commercial affairs that one dealing with an agent, knowing him to be such, who makes payment to him in property, has the burden of showing that he was authorized to accept property in payment, or else that the principal ratified his act in so doing, or accepted the fruits of it. This cannot be shown by presumption alone."

In the case of Cohen v. New Zealand Ins. Co., Ltd., (N. J.) 126 Atl. 417, wherein the agent accepted the merchandise instead of money, the Court of Errors and Appeals of New Jersey, in discussing whether this was binding on the insurer, unless the agreement was made effective by the company by consent, estoppel, or ratification, said:

"Of course, within the sphere of the authority conferred, the act of the agent is as binding upon the principal as if it were done by the principal himself. But it is an elementary principle, applicable alike to all kinds of agency, that whatever an agent does can be done only in the way usual in the line of business in which he is acting. There is an implication to this effect arising from the nature of his employment, and it is as effectual as if it had been expressed in the most formal terms. Hoffman v. John Hancock Mut. Life Ins. Co., 92 U. S. 161, 23 L. Ed. 539.

"Now fire insurance is, broadly speaking, conducted on a money basis. Its disburse-

ments are all in money, and its receipts must necessarily be in the same medium or its equivalent to the company when taken, and this all parties dealing with or for the company are presumed to know. If the agent had authority to take the shirts and underwear in payment of the premium, he had a right to take it in coats or any other chattels. If he had authority to accept such a payment from the plaintiff, he had a right to accept it from every other person who desired to take out a policy, and thereby practically force the company into a mercantile business alien to its charter and in which it had never thought of embarking."

In the case of Smith v. Hartford Fire Ins. Co., 242 P. 455, an opinion written by Mr. Chief Justice Johnson, the Supreme Court of Kansas, in paragraphs 2 and 3 of the syllabus, said:

"In the absence of a provision to the contrary, an insurance agent is not acting within the scope of his authority when he agrees with the insured that a credit on his personal and private debt to the insured shall be treated as payment of a premium.

"Such an arrangement is not a payment of the premium, and, where there is no remittance of the premium to the insurance company, and it has no knowledge of the transaction, and has given it no recognition, no recovery can be had against the insurance company on the basis of such an arrangement."

To the same effect see Turlington v. Metropolitan Life Ins. Co. (S. E.) 193 N. C. 481.

The Supreme Court of Alabama, in the case of Sovereign Camp W. O. W. v. Blanks, 94 So. 554, which did not involve payment of an initial premium and wherein the clerk of the fraternal insurance company entered into an agreement with the insured to pay the assessments for the sale and delivery of a cow, it is said in the third paragraph of the syllabus, as follows:

"The agreement of the local clerk of a fraternal insurance order to pay the assessments of a member as they fell due in return for the delivery of a cow by the member to the clerk is not binding upon the order, in the absence of any proof that it knew or acquiesced in the agreement, so there was nothing upon which to rest either the doctrine of estoppel or of ratification."

We have examined the briefs with care. We refer to some of the cases cited by counsel for plaintiff. In the case of Kansas City Life Ins. Co. v. Hislip, 154 Okla. 42, 6 P. (2d) 678, the insurance company accepted the note given by the plaintiff and delivered the policy. There is no such ratification in the instant case. In the case of North Carolina Mut. Life Ins. Co. v. White, 130 Okla. 118, 265 P. 642, the first year's premium was $52.50. The insured paid $5 in cash and delivered to the agent a promissory note for the balance. It was contended by the insurance company that the burden was upon the plaintiff to show that the company accepted the note in payment of the premium, or that the agent had authority to waive the provisions in the application for insurance. This court held that, as the agent delivered said policy after it was regularly issued by the company, the company would be held to have authorized the delivery of said policy and the acceptance of said note.

In the case of Mutual Life Ins. Co. v. Chattanooga Savings Bank, 47 Okla. 748, 150 P. 190, the record shows a waiver and ratification on the part of a state agent. No such agency exists in the case at bar.

In the case of American Insurance Union v. Mehrton, 150 Okla. 134, 300 P. 659, the question arose as to whether the monthly premiums had been paid when they fell due on the first day of each month, and it appeared that the local agent having collected the monthly premiums did not transmit the same to the insurer and that by reason thereof the insurance company was estopped to set up lapse of policy for nonpayment of premiums.

The Hislip, White, Chattanooga Savings Bank, and Mehrton Cases, supra, involve ratification and estoppel, which conditions are not applicable in the instant case.

Under the record in this case, we are of the opinion that the agreement entered into between the agent, DeWalt, and said insured, William P. Grossman, deceased, was nothing more than a private agreement between said parties whereby the soliciting agent of the insurance company became the agent of the insured. See Public Savings Ins. Co. of America v. Manning (Ind. App.) 111 N. E. 945. And in the absence of any custom, knowledge, acquiescence, or consent on the part of said insurance company relative to said agreement, there is no basis on which to assert the doctrine of estoppel or of ratification against the insurance company.

In view of the foregoing, we conclude that the trial court committed no prejudicial error in sustaining the motion for new trial.

Judgment affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur.