# NEW YORK LIFE INSURANCE CO. v. BOLIN.

No. 27463.   Sept. 21, 1937.

Wilson & Wilson (Louis H. Cooke, of counsel), for plaintiff in error.

Pryor & Sandlin, for defendant in error.

OSBORN, C. J. This action was instituted in the district court of Hughes county by Warda Bolin, hereinafter referred to as plaintiff, against the New York Life Insurance Company, hereinafter referred to as defendant, wherein plaintiff, as the beneficiary of a life insurance policy issued to George E. Bolin, Jr., during his lifetime, sought a recovery upon said policy. Issues were joined, a jury was impaneled, and after the introduction of all the evidence, the trial court directed a verdict in favor of plaintiff. From a judgment thereon, defendant has appealed.

On August 7, 1934, the defendant issued a life insurance policy to George E. Bolin, Jr., the son of plaintiff, in the sum of $1,000, which policy contained a provision for double indemnity in case of accidental death. Premiums in the sum of $8.09 each were payable quarterly. On October 13, 1934, the insured while playing football sustained an accidental injury resulting in

a broken neck, and on December 23, 1934, as a result of the accidental injury, the insured died. Defendant denies liability on the ground that the policy had lapsed for nonpayment of premiums prior to the death of insured.

One H. T. Flaugher testified in behalf of plaintiff that he procured the policy of insurance involved herein; that he had procured an agency contract with the defendant company, but inasmuch as he was the agent of another company procured the contract in the name of Ted Flaugher, his son; that such business as he transacted for defendant company was transacted in the name of his son, and that the company was advised of, and acquiesced in such arrangement. The witness testified, further, that when he delivered the policy he took a note for $8.09, which was later paid and canceled; that during the month of November, 1934, plaintiff came to him and offered to pay the second quarterly premium; that he told plaintiff that, inasmuch as he was indebted to her for the use of her automobile, he would send in the premium for her; he testified that he,. in effect, received two quarterly premiums; that under the terms of the agency contract he was entitled to 50 per cent. of the premium as his commission; that he accounted to the company for $8.09, which was the net amount due the company for the two quarterly premiums; that a corresponding amount to which he was entitled as a commission was settled by a credit upon his indebtedness to plaintiff.

The plaintiff also testified that she tendered the second premium to Flaugher; that he informed her that he would account to the company for the premium and would take credit for the amount of the premium upon his indebtedness to her.

The plaintiff introduced in evidence a receipt issued to Ted Flaugher, agent, by the Oklahoma City office of defendant company showing that on December 19, 1934, defendant had received a "net" payment on the Bolin policy in the sum of $8.09. Other records of the defendant were introduced also showing a credit of said sum upon the policy.

We find no material conflict in the evidence. In the light of the facts recited, defendant takes the position that the second quarterly premium became due and payable on November 7, 1934; that the same was not paid on that date, nor within the 31-day grace period which expired prior to the death of insured, and that the policy had lapsed prior to that date. Such was not the view of the trial court. We quote from its findings, as follows:

"In this case the court finds that the policy was issued, as alleged, and that the quarterly premium was $8.09; that on or about the 19th day of December, the company through its general agent received and accepted the sum of $8.09 and entered the same on its records. The court finds, as a matter of fact, that the agent writing the insurance was entitled to half of the premium on that policy, or fifty per cent., and that the company received at that time all that was due the company under this policy. The motion for directed verdict of the defendant will be overruled and the court will direct a verdict for the plaintiff.

"The court further finds that the total sum received by the New York Life Insurance Company, the defendant herein, was $8.09, and the court finds that any payment made by plaintiff to H. T. Flaugher, or any exchange of debt between plaintiff and the said H. T. Flaugher, would not be a payment to the company; but the court finds that under the record in this case and the facts, as the court sees it, there was no more due the company in actual cash than $8.09 on the date of the payment of that sum. The court finds that H. T. Flaugher retained the amount of money he was to get on the second premium by exchange of debt and never paid it to the New York Life Insurance Company, or any part of it; but the court finds that the company received all that was due them as premium on this policy for two quarters, and acknowledged receipt of the net amount due them for the two quarters, as shown by the evidence."

The issue of law presented for our determination is stated in the brief of defendant as follows:

"The only question, therefore, involved in this appeal is whether this exchange of credit between the mother of the assured and the father of the agent of the company could by any means constitute a payment of the second quarterly premium."

A number of the authorities cited and relied upon for reversal were considered and followed by this court in the case of Turner v. Supreme Lodge, Knights of Pythias, 166 Okla. 286, 27 P. (2d) 612, 93 A. L. R. 647, wherein it was held that a soliciting agent of an insurance company ordinarily has no authority to accept anything other than money or an instrument calling for the payment of money for a premium, such as personal property, or professional services, or even to cancel his own indebtedness to the insured or accept credit for merchandise on his own account. Plain-

tiff concedes the correctness of the rule, but insists that it has no application to the facts in the instant case.

In L. R. A. 1915A, 689, appears the following note:

"If an insurance agent actually carries out his agreement to apply an indebtedness due by him to the insured to the payment of a premium and remits the amount to the insurer, it is held that this constitutes a valid payment of the premium."

In support of such rule are cited the cases of Phoenix Ins. Co. v. Meier, 28 Neb. 124, 44 N. W. 97; Home Ins. Co. v. Gilman, 112 Ind. 7, 13 N. E. 118; Huggins Cracker & Candy Co. v. People's Ins. Co., 41 Mo. App. 530.

The liability of an insurer was upheld in the case of John Hancock Mut. Life Ins. Co. v. Schlink (Ill.) 51 N. E. 795, wherein there was presented a state of facts similar to the facts involved herein. Therein it was held:

"An agent of a life insurance company, authorized to collect premiums, has the right to accept that portion which is equivalent to his commission in property instead of cash."

The case of New York Life Ins. Co. v. Ollich (C. C. A. 6th) 42 Fed. (2d) 399, involved the following state of facts: On May 10, 1928, one Ollich made application to the defendant insurance company through Greitzer, one of its soliciting agents, for a policy of life insurance. The policy required a semi-annual premium of $26.54. The application provided that the policy should not take effect until its delivery and payment in full of the first premium. The application was accepted and the policy sent to the company's branch office at Cleveland, Ohio. About a week after the agent had taken the application, the insured paid him $3, and the agent agreed to advance the first premium to the company, to be repaid in $5 weekly installments. On June 2nd the agent was paid an additional $15, for which he issued his personal receipt, upon which it was stated that there was a balance due of $8.54. The insured was shot and died about midnight on June 3rd. The next morning, the agent, not knowing of the death of the insured, paid the net premium, about $12, at the office of the company. Later in the day he learned of the shooting and death of the insured, returned the policy to the company and tendered the $18 to the beneficiary, which tender was refused. In an action upon the policy a verdict was directed in favor of plaintiff for the full amount of the double indemnity, provided by the terms of the policy. The recovery was sustained by the appellate court. We quote from the body of the opinion as follows:

"But the company, too, may establish a course of dealing with its agent under which the full payment to it as specified is effectuated by its receipt of the net premium, leaving the agent to deal with the balance of the premium, his commission, as he pleases. In the record before us, there is ample evidence to justify the conclusion that, as between the agent and the company, it was the latter's common practice to permit the agent to pay to it only the net premium in cash, without payment or accounting of the balance, his commission, regardless of whether the sum actually paid to the agent by the insured was the gross or the net premium. Accordingly, the difference between the gross and net, the commission, was the agent's to deal with entirely as he saw fit. The company had no interest therein or concern with its use. McConnell v. Southern States Life Ins. Co., 31 Fed. (2d) 715 (C. C. A. 5th). If, therefore, the insured had paid the amount of the net premium to the agent and the latter had delivered the policy to the insured, treating the amount of his commission as a loan by him to the insured, the policy would have been in force, since there would have been an actual delivery and the company's share of the first premium would have been paid. See Metropolitan Life Ins. Co. v. Williamson, 174 F. 116 (C. C. A. 5th); Conservative Life Ins. Co. v. Condos, 24 Ohio App. 506, 157 N. E. 306."

Other cases which are in harmony with the viewpoint hereinabove expressed are: New York Life Ins. Co. v. McCreary (C. C. A. 8th) 60 F. (2d) 355: United Fidelity Life Ins. Co. v. Handley, 126 Tex. 147, 86 S. W. (2d) 201; Reppond v. National Life Ins. Co. (Tex.) 101 S. W. 786, 11 L. R. A. (N. S.) 981. See R. C. L. p. 965, para. 137.

In view of the fact situation existent in the instant case, these authorities are determinative and controlling. The trial court treated the remittance of $8.09 to the company as a net remittance covering two quarterly premiums. The records of the company disclose receipt of but one payment in an amount sufficient to pay one gross premium or two net premiums. The records further disclose that said payment was entered as of the date of December 19, 1934, and upon that date the grace period of 31 days for the payment of the second premium had expired. The record discloses that the soliciting agent was authorized to collect the first premium. The re-

mittance was made and received by the company at a time when two quarterly premiums were due and was in an amount sufficient to pay the net amount due the company on premiums then accrued. No contention is made that the agents were required to remit gross premiums and look to the company for reimbursement for commissions. We find no error in the conclusion and judgment of the trial court.

The judgment is affirmed.

BAYLESS, V. C. J., and WELCH, CORN, and HURST, JJ., concur.