## ATLANTA SAVINGS BANK *v.* DOWNING *et al.*

Under the facts of this case there was no error in directing the verdict complained of.

Argued February 3,—Decided May 10, 1905.

Interpleader.    Before Judge Lumpkin.    Fulton superior court. April 8, 1904.

This case arose on a petition filed by the Mutual Life Insurance Company of New York, praying leave to pay into court the sum of $170, and for an order requiring the Atlanta Savings Bank, C. Downing, and Jacob L. Beach to interplead and have adjudicated their respective claims to this fund.   An order was entered requiring these parties to interplead, and upon the hearing the following facts appeared:    The Mutual Life Insurance Company issued certain policies upon the life of J. L. Beach.   Beach became indebted to Downing, and assigned these policies to him as security for the debt.    The policies had a cash surrender value, and it was subsequently agreed that they should be surrendered and the amount due Downing paid.   On November 1, 1900, Downing wrote to the general agent of the insurance company at Atlanta, stating that he had directed that the Beach policies be forwarded to the agent; that Beach appeared to be in need of money, and had asked the writer to sell the policies to the company, pay himself, and turn over the balance to Beach.    The letter then proceeds as follows: " If the surrender value will pay this to me, and $300, or more or less, be left over, I am willing to sell, and you may fix up . papers for signature and I will sign same.    You will probably want Mr. Beach and Mrs. Beach's relinquishment also, which you can get from them." The agent of the company replied to this letter, acknowledging receipt of the policies, and stating that proper papers for surrendering them had been handed to Beach.   It was also stated that the aggregate cash value of the policies was $680. On November 5 Downing wrote to the agent, directing him to retain and pay on a note of Downing to the company. the sum of $416.65, the amount of Beach's debt to him, and to pay over to Beach the sum remaining.   This credit was, however, never given Downing on his note, and he subsequently took up the note with other funds.   On November 10 Downing wrote to the company's agent, stating that Beach seemed to be in need of money, but " I

can't advance any more.    If you can see your way to give him
his part, taking full receipts therefor, and have check drawn to
order of cash, I would be glad you would do so."    This was not
done.    The company sent from New York to its agent in Atlanta
three checks, each of them made payable to C. A. Prellor, and by
him indorsed so as to make them payable to the order of Jacob L.
Beach, Jacob L. Beach, guardian, and C. Downing.    The first
check was for $170, and when it arrived Downing allowed Beach
to retain the entire amount.    When the second check, for $340,
arrived, Beach was allowed by a representative of Downing to
have $80 of the proceeds, while Downing received the balance.
The third check, for $170, was delayed in its arrival.    On No-
vember 23, the last check not having then arrived, Beach applied
to the Atlanta Savings Bank for a loan, offering his interest in the
policies as security.    The bank inquired of the insurance com-
pany's agent as to the equity of Beach in the policies, and the
agent either showed the bank or informed it of the substance of
Downing's letter in which he stated what was the extent of his
interest in the policies.    Upon receiving this information, it ap-
pearing therefrom that Beach's interest was greater than the
amount of the loan applied for, the bank loaned to Beach $102.50
and took an order on the agent of the company, signed by Beach
and his wife, directing him to hold the check or checks of the
company in settlement of the cash surrender value of the policies
until indorsed in his office and until the bank paid the amount of
its loan to Beach.    When the third check arrived, on December
5, the agent of the company turned it over to the bank.    Down-
ing refused to indorse the check, and claimed that he was entitled
to payment out of it of the balance of his debt.    The bank con-
tended that it had a right to collect the check and reimburse it-
self.    The judge directed a verdict in favor of Downing, and the
bank excepted.

   *Brown & Randolph,* for plaintiff in error.    *W. E. Kay, King,
Spalding & Little,* and *J. H. Gilbert,* contra.

   FISH, P. J.    We are not concerned with any equities which
may exist between Downing and the insurance company, or be-
tween that company and the bank.    The question to be decided
is whether the bank or Downing had a better claim to the fund,

as between each other.    It is clear that Downing had legal title to the policies by virtue of his assignment.    *Liverpool Ins. Co.* v. *Ellington*, 94 *Ga.* 785.    Downing informed the insurance company what was the extent of his interest in the policies.    He had a right to control the amount due on the policies, and to be first reimbursed therefrom.    He consequently had a right to direct the company to retain the amount due him, or pay over that sum to him, before the balance of the amount due on the policies was paid to Beach.    There is no suggestion in any of the letters from Downing to the insurance company that he was willing, under any circumstances, for Beach to be paid before he was reimbursed the amount of his debt.    At the time the bank made the loan to Beach it was aware of Downing's statement as to the amount of his debt, and it also knew or could easily have ascertained what direction Downing had given to the insurance company as to its payment.    Moreover it knew that Downing had a right to give such direction to the company, inasmuch as it was aware of the assignment of the policies to him.    This being so, it was the plain duty of the bank, before making the loan to Beach, to make inquiry of Downing to see if he had been paid.    Knowing that Downing had legal title to the policies under his assignment, it knew that Beach could assign to it only such interest in the policies as he had after Downing was paid.    Downing had priority.    Until his debt was satisfied, the bank had no claim on the money due on the policies.    It made the loan at its peril, without inquiring whether Downing's debt had been paid.    Downing had no notice of the bank's claim until asked to indorse the check turned over to it by the agent of the insurance company. It was no concern of the bank that Downing permitted Beach to take his part of the fund out of the first checks sent.    He was under no obligation to the bank to reimburse himself first.    Downing was guilty of no fraud or misrepresentation to the bank, nor had he made any statement to the agent of the insurance company which would estop him from collecting his debt as against the bank.    His mere statement as to the amount of his claim certainly could not have this effect.    There was but one fund in the hands of the insurance company due on the policies.    This was a lump sum which Beach and Downing were to divide in accordance with the private arrangement between them.    Nor did the

company undertake to divide the fund when it drew its checks. It treated it all the time as a lump sum due on the policies. The checks were made payable jointly to Beach and Downing, and were sent to Beach. The order given by the Beaches to the bank did not undertake ·to assign· any ·particular fund ·or check, but directed the company to hold any check or checks until the bank had been paid. But even if the order be treated as an equitable assignment, there was no separate check payable to Beach. . He had no right to direct the company to hold a check payable to himself jointly with Downing, nor did the company have a right to hold such a check on his order. The bank was chargeable with notice of these facts, and knew that as against Downing it had no right to receive the check, or to call on him to indorse it until he had himself been reimbursed. When Beach gave the bank the order, nearly his entire interest in the policies had been satisfied, and the bank could easily have ascertained this if inquiry had been made of Downing. Downing's equity was superior to the bank's and there was no error in directing a verdict in his favor.

*Judgment affirmed. All the Justices concur, except Candler, J., absent, and Lumpkin, J., disqualified.*