## McCAIN *et al.* *v.* BONNER.

1. Where the judge's certificate to a bill of exceptions bears a given date, and the acknowledgment of "due and legal service" of the bill of exceptions appears to have been signed on the same date, on which day the bill of exceptions was filed in the office of the clerk, the presumption is that the different steps taken in having the certificate signed, service acknowledged, and the bill of exceptions filed were in their proper chronological sequence.

2. That one of the assignments of error in a bill of exceptions can not be considered by this court, because exception to the ruling thereby complained of was not taken in time, affords no ground for dismissing the writ of error, if there be another assignment of error in the bill of exceptions upon which the court can properly pass.

3. Suit upon the bond of a constable may be brought in the name of any person aggrieved by the official misconduct of the officer, against him and his sureties, without bringing against him any preliminary action to settle his liability to the aggrieved party for his alleged misconduct.

4. When a person wishing to sue out a distress warrant prepares the necessary papers, takes them to a magistrate, explaining their character and reading over to him the affidavit on which the distress warrant is based, which affidavit the former has already signed, and he at the same time states to the magistrate that he will swear to the facts recited in the affidavit, and requests the magistrate to sign the jurat, which he immediately does with the understanding that the affiant's intention is to swear to the truth of the facts as stated in the affidavit, and returns the papers to the affiant properly attested, neither the affiant nor any third person can afterwards be heard to assert that the distress warrant is void because not based on an affidavit made by a person to whom an oath was legally administered. Though the affiant may have done all of the talking, and the magistrate may not in terms have called upon him to declare on his oath that the facts recited in the affidavit were true, yet the concurrence of present act and intent on the part of both was the fair equivalent of a formal oath solemnly administered by the magistrate, and consciously and with equal solemnity taken by the affiant.

Argued April 25; — Decided May 11, 1905.

Action on bond.    Before Judge Hodnett.    City court of Carrollton.    December 5, 1904.

*Sidney Holderness,* for plaintiffs in error.
*W. F. Brown,* contra.

EVANS, J.    This was a suit upon the official bond of a constable. The bond recited that J. R. McCain had been elected constable of the 1152d district of Carroll county, and was conditioned upon the faithful performance of his duties as constable for that district. The bond was payable to the ordinary and in all respects complied with the statutory requirements.    The breach alleged was that on the 3d day of October, 1902, the plaintiff sued out before W. H.

Rowe, N. P. and ex-officio J. P. for the 1152d district, a distress warrant against W. T. Phillips for the principal sum of $150, which warrant was levied by the constable on December 4, 1902, upon the crop on the place described in the warrant as the property of Phillips, which property was sufficient to more than pay the amount claimed in the distress warrant; that instead of delivering the warrant with a return of the property levied on to the sheriff of the county or his deputy, as required by law, the constable surrendered the property to Phillips, upon his executing and delivering to the constable some instrument in writing not authorized by law; and that the constable still fails and refuses to deliver the distress warrant, together with a return of the property levied on, to the sheriff of the county or his deputy, and fails and refuses to pay plaintiff the amount due on the distress warrant. The defendants demurred to the declaration, on the ground that suit was instituted in the name of the plaintiff, who had no right of action on the bond; and because the sureties were sued in the same action with the principal. The court overruled the demurrer, and the defendants filed exceptions pendente lite. The case went to trial, and the jury returned a verdict for the defendants. The plaintiff made a motion for a new trial, which was called for a hearing on November 4, 1904, at which time the defendants moved to dismiss the motion for a new trial, on the ground that the evidence had not been briefed as required by the statute. The court declined to dismiss the motion for a new trial, heard argument thereon, and reserved his decision upon it till December 5, 1904, when he rendered a judgment granting a new trial. Defendants sued out a bill of exceptions, in which error is assigned upon the overruling of their demurrer, upon the refusal of the court to sustain their motion to dismiss the motion for a new trial, and upon the judgment granting a new trial.

1. On the call of the case in this court, the defendant in error moved to dismiss the writ of error, because it did not affirmatively appear that service of the bill of exceptions was made after the signing of the certificate of the presiding judge. The date of the certificate, the date of the acknowledgment of "due and legal service" of the bill of exceptions, and the date of its filing in the clerk's office are the same, December 24, 1904. This being true, the presumption is that the different steps taken in having the

certificate signed, service acknowledged and the bill of exceptions filed were in their proper chronological sequence. *Porter* v. *Holmes,* 122 *Ga.* 780. Accordingly, the writ of error will not be dismissed.

2. The defendant in error also moved to dismiss the writ of error, on the ground that it did not appear that the bill of exceptions was tendered to the judge within thirty days of the date of the "decision" complained of. As has been stated, the defendants below assign error upon three distinct rulings or decisions. The complaint of the judgment granting a new trial is certainly in time; for that judgment was rendered on December 5, 1904, and the bill of exceptions was certified on December 24, 1904. The right to assign error on the overruling of defendants' demurrer was preserved by filing exceptions pendente lite. The exception taken to the refusal of the judge to dismiss the motion for a new trial is not in time, this decision having been rendered on November 4, and the bill of exceptions having been sued out after the date of the judgment granting a new trial, rendered on December 5. But this fact affords no ground for dismissing the writ of error; the exceptions made in time will be considered and passed on, while that which came too late will be ignored. *Dodson Co.* v. *Harris,* 114 *Ga.* 966.

3. As to the defendants' demurrer, we think it was properly overruled. The Political Code, § 12, expressly provides that upon all bonds taken from public officers, suit may be brought "by any person aggrieved by the official misconduct of the officer, in his own name, in any court having jurisdiction thereof, without any order for that purpose." A constable is a public officer who is required by law to give bond conditioned on the faithful performance of his duties. Civil Code, § 4094. And if he commits a breach thereof, he and the sureties on his bond may be sued, no preliminary suit against him being requisite to entitle the aggrieved party to sue on the bond. *Jefferson* v. *Hartley,* 81 *Ga.* 716.

4. As this was the first grant of a new trial, the question arises whether the verdict was demanded by the evidence; for if it was not, the discretion exercised by the trial judge is not to be interfered with. Civil Code, § 5585. The contention upon which the defendants practically rested their defense was that the distress

warrant amounted to no more than void process, inasmuch as the attorney for the plaintiff, who signed the affidavit upon which the distress warrant was based, was not sworn and took no oath before the magistrate who issued it. The evidence touching this issue was conflicting. The magistrate, who appeared as a witness in behalf of the defendants, testified that he did not know the character of the paper he was called on to sign; that he administered no oath to the attorney for the plaintiff, nor did this attorney undertake to swear to the truth of the statements of fact upon which the distress warrant was issued, though he had previously signed the accompanying affidavit. On the other hand the attorney for the plaintiff testified as follows: "I did swear to that affidavit to get that distress warrant before Squire Rowe. I signed it and carried it down there and read it over to him and told him what it was, and said I wanted to make an oath to it." "It is not true that I went to Squire Rowe, a newly elected justice of the peace, having little experience, . . and said, 'Here, Squire, sign your name here and here,' and that I took the paper and shoved it down in my pocket without him knowing what it was. He swore me, and I told him I prepared the paper. . . I read it over to him; I told him what it was." "I told Squire Rowe there was a distress warrant, and what it was about. My recollection is, and I am pretty sure, I read the first part of it. I told him it was an affidavit; would swear to the facts in it; was a distress warrant for the Phillips' crop. . . I told him I would swear to the facts in that affidavit. He signed the paper. I told him what the other part was; don't think I read that to him. I told him it was necessary to have his signature there." "Just as I said awhile ago, there was a distress warrant to be levied on Mr. Phillips' crop, and I read over the first part of it to him and told him I would swear to the facts, and my recollection is that I had already signed it up there at home. I told him I would swear to the facts in it. I don't know that he asked me if I would swear to it, but I told him I would swear to them as set out." The jury rendered a verdict for the defendants on the plea that the distress warrant was void because no oath was administered to the person upon whose alleged affidavit the warrant issued.

Before a distress warrant can issue, the person claiming the rent, or his agent or attorney, must make oath in writing as to

the amount claimed to be due.  Civil Code; § 4818.  The mere handing to an officer authorized to administer oaths of an affidavit previously signed by one who is recited therein as having been duly sworn, and in whose presence the officer signed the jurat, without administering a formal oath, has been held not to amount to the administration of an oath.  O'Reilly v. People, 86 N. Y. 154.  In a transaction of this character there is no unequivocal and present declaration or act on the part of the affiant by which he consciously takes upon himself the obligation of an oath.  If, however, the affiant, at the time of tendering the affidavit to the officer, uses language signifying that he consciously takes upon himself the obligation of an oath, and the officer so understands and immediately signs the jurat, this will amount to such concurrence of act and intention as will constitute a legal swearing.  The acts of the officer and of the affiant must be concurrent and must conclusively indicate that it was the purpose of the one to administer and the other to take the oath, in order to make a valid affidavit.  When an affiant presents to the officer an affidavit previously signed by him, with the statement that he is familiar with its contents, that what is therein contained is true, and that he swears to the same, and the officer immediately, on the faith of such declaration, affixes his official signature to the jurat, this conduct would not only indicate that the affiant understood he was taking an oath, but also that the officer likewise so understood, and, by presently signing the jurat, evidenced his intention to administer an oath.

It is not necessary that the oath administered should be formal.  What the law requires is that "there must be, in the presence of the officer, something done whereby the person to be bound consciously takes upon himself the obligation of an oath."  2 Bish. Cr. Law. § 1018.  " It is not essential . . that affiant should hold up his hand and swear in order to make his act an oath, but it is sufficient if both affiant and the officer understand that what is done is all that is necessary to complete the act of swearing."  2 Cyc. 16.  The record discloses testimony from which a jury might well conclude that both the magistrate and the affiant understood that an oath was being administered and taken.  There was evidence from which the contrary inference might be drawn; but this was purely an issue of fact.  The evidence did

not demand a finding either way. What has been said above does not conflict with the case of *Matthews* v. *Reid*, 94 *Ga.* 461. There the officer did not attest the affidavit till long afterwards, and it did not appear that he heard the affiant when he said he wanted to swear to the paper and that the facts stated in it were true. The officer did no present and concurrent act with the affiant which showed that both understood an oath was being administered; and on the trial he testified that he had no recollection whatever of being called on at the time to do anything in connection with the paper.

*Judgment affirmed.　All the Justices concur, except Candler, J., absent.*