*A. W. Cozart*, for defendant.

---

## 16066. NEW JERSEY INSURANCE COMPANY OF NEWARK v. ROWELL.

1. The court did not err in admitting in evidence either the policy of insurance on which the suit was based, or the receipt for it given the insured after the fire and signed: "New Jersey Insurance Company, by James S. Bailey for the Company."

2. For no reason alleged was it error for the court to refuse to grant a nonsuit.

(a) "A complete contract of insurance exists when the minds of the insurer and the person to be insured meet upon the essential elements, to wit: the subject-matter to which the policy should attach, the risk insured against; the duration of the risk; the amount of the indemnity; the premium to be paid; subject to the limitation that by statute in this State the policy must be written, though not necessarily delivered. All the essentials need not, however, be expressly negotiated upon, but may be understood from custom, course of dealing, or other circumstances from which assent to them may fairly be implied." *Todd* v. *German American Ins. Co.*, 2 *Ga. App.* 789 (1) (59 S. E. 94).

(b) It is not necessary that an oath administered should be formal. "It is sufficient if both affiant and the officer understand that what is to be done is all that is necessary to complete the act of swearing."

(c) In view of the rulings in *New Jersey Ins. Co.* v. *Rowell*, 157 *Ga.* 360 (121 S. E. 414), s. c. 32 *Ga. App.* 16 (123 S. E. 38), the court did not err in refusing to grant a nonsuit for any of the reasons alleged in the other grounds of the motion for a nonsuit.

(d) The court did not err in directing a verdict in favor of the plaintiff

for the full amount sued for, less the items for damages and attorney's fees.

DECIDED MARCH 3, 1925.

Complaint; from Colquitt superior court—Judge W. E. Thomas. October 6, 1924.

H. P. Rowell was lessee of a building occupied by him as a grocery store and owned by James Holmes. A fire-insurance policy, under which loss was payable to Holmes as his interest might appear, was issued to Rowell, insuring the building for $750 "while occupied by lessee (tenant) as a grocery store," and insuring the goods in the building for other sums stated. Rowell, after the building and the goods had been damaged by fire, sued the insurance company for an alleged loss of $1732.07 on the policy, and for additional sums as damages and attorney's fees. On exceptions to the overruling of a demurrer it was held that the petition "was not subject to general demurrer," and that "the special demurrers to the petition are without substantial merit." See 157 *Ga.* 360 (121 S. E. 414) ; 32 *Ga. App.* 16 (123 S. E. 38). In the demurrer it was contended that it appeared from the petition that the insured had no insurable interest in the building, or, if he had such an interest, his interest was not insured; and that he could not recover for damage to a building not owned by him and to which he had no legal or equitable title.

On the trial the plaintiff testified that a part of the premium on the policy was paid in cash, and that the agent who issued it traded with him for a part of the premium, in groceries, cigars, etc. The defendant contended that the payment of a part of the premium in groceries, etc., constituted a fraud on the insurance company and rendered the policy void; and on this ground the defendant objected to the policy when it was offered in evidence. The receipt referred to in the first headnote was objected to on the grounds that it was irrelevant, and that there was no evidence that Bailey had authority to sign it. The plaintiff testified that Mr. Stallings, of the Stallings Insurance Company, the agent that issued the policy, told him, after the fire, that he wanted the policy in his office to make out the proof of loss and adjust the loss, and that "Mr. Stallings's representative," Bailey, "acting for Mr. Stallings," came to his place and got the policy; that he knew that Bailey was acting for Stallings, "because he had been working for

him." There was other testimony as to Bailey's connection with Stallings.

The grounds of the motion for a nonsuit were: (1) that the policy is void because a part of the premium was paid "by the exchange of or credit for goods; which constituted a fraud upon the company;" (2) that the alleged proofs of loss were not sworn to; (3) that there was no proof of loss as to the interest of the plaintiff in the building; he alleges damage merely to the building, and not to his interest in the building under his lease; (4) that the proof shows that the building was the property of Holmes, and that the plaintiff had no interest in it; (5) that the policy was an entire and indivisible contract, and if a single item is not recoverable, the entire cause of action falls with that item.

*Smith, Hammond & Smith, Kline & Moore,* for plaintiff in error.
*R. S. Roddenbery Jr., Waldo DeLoache,* contra.

BLOODWORTH, J. Rowell brought suit against the New Jersey Insurance Company of Newark, New Jersey, on an insurance policy, for the amount thereof, and in addition asked for damages and attorney's fees. On the trial the court directed a verdict for the plaintiff for the full amount of the policy, but denied a recovery of damages and attorney's fees. To the judgment for the amount of the policy the defendant excepted. We will discuss only subdivisions *a* and *b* of the 2d headnote.

(*a*) It is insisted that the policy sued upon is void because "a part of the premium was paid by the exchange of or credit for goods; which constituted a fraud upon the company." As authority for this proposition counsel for plaintiff in error cite Hoffman *v.* John Hancock Mutual Life Ins. Co., 92 U. S. 161; Folb *v.* Firemen's Ins. Co., 133 N. C. 179 (45 S. E. 457); and Cohen *v.* New Zealand Ins. Co. (N. J.), 126 Atl. Rep. 417. Neither of these cases supports the contention of the plaintiff in error. In the Hoffman case a life-insurance policy and an application for it were involved. Goodwin, a subagent of the Hancock Mutual Life Insurance Company, accepted from Hoffman certain personal property and notes, and issued to him a receipt in which it was stipulated that "it is expressly agreed and understood, that, if the above-mentioned application shall be declined by the said company, it shall be deemed that no insurance has been created by this receipt; but the amount above receipted shall be returned to the

holder of this receipt, which shall then be given up." Without knowledge of the receipt or of the agreement between Goodwin and Hoffman, the agent, Thayer, forwarded the application, and the policy was issued. Afterward, when Hoffman called for the policy, Thayer demanded the premium, and, when informed of the agreement between Hoffman and Goodwin, refused to ratify the transaction and deliver the policy. The record shows that no part of what was paid by Hoffman to Goodwin ever came into the hands of Thayer or the company, or inured in any way to the benefit of . either. The Supreme Court of the United States held that "no valid contract as to the company could arise from such a transaction." In the. Folb case the plaintiff claimed that Underwood, a local agent for the Firemen's Insurance Company, issued to him a policy upon a stock of goods, and that he paid the premium in merchandise. The record shows that "McRae, agent for the company, notified the plaintiff that the company would not recognize any liability. No policy of insurance was ever produced, nor was there any evidence that any policy was ever issued, nor that the defendant had any notice of the transaction until after the fire." In that case the Supreme Court of North Carolina quoted from Ostrander on Insurance (2d ed.) p. 295, the following: "Where the agent delivers a policy to the merchant with whom he has dealings and to whom he is indebted for goods due for the use of his family, and the premium by agreement is placed to the credit of the account, it is a fraud on the principal, and *should a loss occur, the agent having failed to remit,* the insurer will not be liable." (Italics ours.) In the Cohen case the record shows that "on or about January 1, 1922, Weaver procured the policy from the plaintiff, stating that there was 'something wrong' with it which he would 'fix up;' that on January 11, 1922, Weaver sent the policy to the company, marked 'cancelled, not wanted;' that shortly thereafter Weaver absconded, and has not been heard from since; that the company never received anything whatsoever on account of the premium; that the plaintiff 'forgot' about the policy until after the fire, which occurred November 12, 1922; that the company upon receipt of proof of loss immediately disclaimed liability upon the ground that the policy had been returned and canceled." The court in that case said: "In this situation it seems clear that the policy in question never be-

came an outstanding obligation of the company." From the foregoing it will appear that the facts in the cases relied upon by counsel for plaintiff in error clearly differentiate those cases from the case under consideration.

In *Todd* v. *German American Ins. Co.,* 2 *Ga. App.* 793 (1) (59 S. E. 96), Judge Powell, speaking for the court, said: "It may be said generally that to constitute a completed contract of insurance, the minds of the parties should meet and agree upon five things: (1) The subject-matter to which the policy should attach; (2) the risk insured against; (3) the duration of the risk; (4) the amount of indemnity; (5) the premium to be paid. 1 Wood on Insurance, § 5; Michigan Pipe Company *v.* Michigan Ins. Co., 92 Mich. 482, 20 L. R. A. 277; May on Insurance, § 43 et seq.; Joyce on Insurance, § 43. 'All the essentials need not, however, be expressly negotiated upon, since they may be understood, as where the terms of the usual policy are presumed to have been intended; or where the usual rate of premium is presumed to have been meant; or in case the duration of the risk is understood to be the same as in a former policy; or where by custom and usage a certain course of dealing has been established.' Joyce on Insurance, § 46; Wynn *v.* Niagara Insurance Co., 91 N. Y. 186; Audubon *v.* Insurance Co., 27 N. Y. 222; Home Ins. Co. *v.* Adler, 71 Ala. 516. In this State, by the Civil Code [1895], § 2089, 'Such contract, to be binding, must be in writing; but delivery is not necessary if, in other respects, the contract is consummated.' *New York Life Ins. Co.* v. *Babcock,* 104 *Ga.* 67; *Southern Ins. Co.* v. *Kempton,* 56 *Ga.* 339. Although a policy of insurance has been written, the insurer may defend against an action thereon, provided it is made to appear that the minds of the parties have never met as to the essential elements. On the other hand, a plaintiff in an action against an insurer may recover upon a policy written, but not delivered, if it appears that the policy was executed by the insurer in response to an offer on the former's part to take such insurance; which offer may be direct, immediate, and express, or may be implied from general language, surrounding circumstances, or a previous course of dealing. This offer need not be made personally, but may be made by an agent. The consideration of the contract may consist either of the payment of the premium by the insured or by another, *or of a promise, express or implied, to*

*pay it* [italics ours]; which promise likewise need not be the personal promise of the insured, but may be the promise of any other person, acceptable to the insurer. These generalizations are not only deducible from those recognized rules of law which govern nearly all contracts, but are also sustained by the practically unbroken current of authority in England and America. See, in addition to the authorities cited above, *Fireman's Ins. Co.* v. *Pekor,* 106 *Ga.* 1; *Mechanics Ins. Co.* v. *Mutual Assn.,* 98 *Ga.* 266; Lebanon Ins. Co. *v.* Hoover, 113 Pa. St. 591, 57 Am. Rep. 511, and notes."

In the case we are now considering the policy was regularly issued and delivered. The insured paid to the local agent the full premium, and at the time of the fire the policy was in the hands of the insured. When these things are shown by competent evidence a prima facie case of liability is proved. Until there is evidence to the contrary it will be presumed that the agent kept faith with his principal and sent to it the premium, less commissions and expenses. Surely, where an insurance policy is regularly issued and the company receives the full amount of the premium, less commissions, the policy will not be rendered void by the simple fact that the local agent accepted a part of the premium in goods instead of in cash. See *Metropolitan Life Ins. Co.* v. *Thompson,* 20 *Ga. App.* 706 (3) (93 S. E. 299).

(b) It is further alleged that "the evidence shows that no sworn proofs of loss were submitted." The evidence relative to this shows that the proofs were prepared by the attorney of the insured; that the insured and his attorney went together to the office of a notary public; that the insured, when asked if he knew the contents of the affidavit, replied that he did, and that it was true. The attorney swore that he did not know whether he or the notary administered the oath, and that the insured signed the affidavit and then the notary signed it. We think this is sufficient to show that the affiant consciously took upon himself the obligation of the oath, and that the notary so understood, and that immediately after the affiant signed the affidavit the notary signed the jurat. In *McCain* v. *Bonner,* 122 *Ga.* 846 (51 S. E. 38), the Supreme Court said: "If, however, the affiant, at the time of tendering the affidavit to the officer, uses language signifying that he consciously takes upon himself the obligation of an oath, and

the officer so understands and immediately signs the jurat, this will amount to such concurrence of act and intention as will constitute a legal swearing. The acts of the officer and of the affiant must be concurrent and must conclusively indicate that it was the purpose of the one to administer and the other to take the oath, in order to make a valid affidavit. When an affiant presents to the officer an affidavit previously signed by him, with the statement that he is familiar with its contents, that what is therein contained is true, and that he swears to the same, and the officer immediately, on the faith of such declaration, affixes his official signature to the jurat, this conduct would not only indicate that the affiant understood he was taking an oath, but also that the officer likewise so understood, and, by presently signing the jurat, evidenced his intention to administer an oath. It is not necessary that the oath administered should be formal. What the law requires is that 'there must be, in the presence of the officer, something done whereby the person to be bound consciously takes upon himself the obligation of an oath.' 2 Bish. Cr. Law, § 1018. 'It is not essential . . that affiant should hold up his hands and swear in order to make his act an oath, but it is sufficient if both affiant and the officer understand that what is done is all that is necessary to complete the act of swearing.' 2 Cyc. 16." Moreover, in paragraph 18 of the petition it was alleged that the defendant had received satisfactory proof of loss, and in answer thereto the defendant admitted that "more than sixty days have elapsed since defendant received the sworn statement of the insured."

The court did not err in refusing to grant a nonsuit, and properly directed a verdict for the amount of the policy.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*