26151.   MARYLAND CASUALTY CO. *v.* SMITH, admx., *et al.*

Decided June 18, 1937.   Rehearing denied July 8, 1937.

158

*Jones, Russell & Sparks, Johnston & Jones,* for plaintiff in error.
*J. H. Dorsey,* contra.

SUTTON, J. Under the law and the evidence in the present case a finding in favor of the plaintiff was demanded, and it is unnecessary to discuss the assignments of error on the judgment refusing to recommit the case to the auditor and the judgment overruling the exceptions of law. We think it sufficient merely to point out wherein the judgment of the court finally entered in favor of the plaintiff was the only one that could legally have been rendered. It should be noted that the plaintiff was suing to recover only the amount of the penalty of the bond of the deputy sheriff based on his default with respect to collections on certain specific fi. fas. entrusted to him by the sheriff. Cobb admits that he received these fi. fas., collected the amounts involved, and is short to the

extent of $1725.34. They were only a few of the many delivered to him while he was in office. The record shows that in 1932, 1933, and 1934 he turned in to the tax-collector's office not less than $41,124.03. Whether Cobb is short on any fi. fas. other than those named in the exhibit attached to the petition is not involved in the suit. His bond was to Smith, the sheriff, and to him he was bound to account. He could do so by turning in his collections to Smith or to the tax-collector. In almost all instances he turned the money in to the tax-collector's office. He was thereby absolved to that extent, and at the same time established a credit in favor of the sheriff. There is no evidence that Cobb was short in respect to any collections except those specifically listed in the petition. If he had not turned in to the tax-collector or the sheriff the full amount due, the sheriff had the right to demand settlement for the balance. The settlement made by the sheriff with the tax-collector, pursuant to the audit for 1934, brought into the office of the tax-collector the full amount necessary to discharge Smith's official obligation for all tax collections by himself or his deputy. Whether the sheriff considered that any part of the amount that he had to pay the tax-collector in excess of $1725.34 was chargeable to Cobb as a further shortage, we can not now know. Aside from the amount of $1725.34, any other difference that existed between Smith and Cobb could possibly be shown by the "mutual account" if that record had not been destroyed by fire; but, as other items than those which could be classified as tax collections also went into that account, it would not necessarily follow that the difference, even if in favor of Smith, would constitute a shortage of Cobb as to tax collections. In the absence of any evidence, it must be presumed that Cobb did what he was required by law to do, and that he has paid Smith what he should have paid, in addition to what he paid the tax-collector, as tax collections on fi. fas. exclusive of those as to which a shortage is claimed by the plaintiff.

When the shortage of Cobb was discovered, and he did not pay it either to the tax-collector or to Smith, Smith was legally bound to pay it for him. Therefore to the extent of $1725.34 Smith was aggrieved by the default of Cobb. Has he any remedy? The Code declares: "Every official bond executed under this Code is obligatory on the principal and sureties thereon. 1. For any

breach of the condition during the time the officer shall continue in office or discharge any of the duties thereof. 2. For any breach of the condition by a deputy, although not expressed, unless otherwise declared by law. 3. For the faithful discharge of any duties which may be required of such officer by any law passed subsequent to the execution of such bond, although no condition is expressed therein. 4. For the use and benefit of every person who is injured, either by any wrongful act committed under color of his office or by his failure to perform, or by the improper or neglectful performance of those duties imposed by law." § 89-418. "Suits on bonds taken from public officers may be brought by any person aggrieved by the official misconduct of the officer, in his own name, in any court having jurisdiction thereof, without an order for that purpose." § 89-420. This section applies to the bond of every public officer. *Jefferson* v. *Hartley,* 81 *Ga.* 716, 718 (9 S. E. 174); *Maloy* v. *Williams,* 140 *Ga.* 376 (78 S. E. 1054). The right of an interested party to sue is further granted by the Code, § 89-905: "All bonds taken by public officers, under the laws of this State, shall be returned to the offices specified by law; and any person interested therein may bring suit thereon, in his own name, in any court having jurisdiction thereof." No preliminary judgment against the principal, the officer, is necessary to a suit against the surety on his bond. *Jefferson* v. *Hartley,* supra; *McCain* v. *Bonner,* 122 *Ga.* 842 (3), 844 (51 S. E. 36); *McCollough* v. *Hand,* 16 *Ga. App.* 484 (85 S. E. 673). The sheriff is required by the Code, § 24-2811, to take a bond from his deputy. For failure to discharge his duty in this respect he may be held liable, even after his retirement from office, by any person who has been injured. It is the sheriff's responsibility to see as to the correctness of the deputy's bond and the solvency of the surety. The bond is not made payable to his successor in office, but to him alone. Upon a breach of that bond the sheriff, as obligee, may maintain suit on the instrument in his own name, even though prior to the bringing of the suit he may have gone out of office. *O'Neill Mfg. Co.* v. *Harris,* 120 *Ga.* 467, 468 (47 S. E. 934); *Hatton* v. *Brown,* 1 *Ga. App.* 747, 750 (4) (57 S. E. 1044); *Harrell* v. *Emanuel,* 27 *Ga. App.* 546, 548 (109 S. E. 294). Smith, if alive, could maintain the present suit as an aggrieved party. Being deceased, the suit is maintainable by the administratrix of

his estate to the extent of his loss, not in excess of the penal amount of the bond.

It is admitted in the brief of counsel for the plaintiff in error: "In fairness to both sheriff Smith and Cobb, it should be stated, and the auditor has so found, that neither intended to steal the county's money. Withdrawals for personal uses were intended to be temporary withdrawals. . . Deputy Cobb expected to earn commissions based on collection of tax fi. fas., and for the services to be performed by him as deputy sheriff. He anticipated or thought he was anticipating the earning of commissions or other personal income. We assume that both he and the sheriff expected the funds to be replaced either by the deputy sheriff or by the sheriff. Unfortunately in the case of the deputy sheriff the shortage reached such proportions that it could not be covered by him. That is exactly what may be expected in any similar case, and that is the burden of our defense to this case." It is urged in defense that the course of conduct of the deputy, acquiesced in by the sheriff and at times inspired by him, estops him from claiming that he has been damaged, and that by such course of conduct the hazard and risk of the surety were increased. But the objection to the argument as to estoppel is that it is not apparent that the sheriff had approved of disbursement of any part of the fund of $1725.34 represented by the fi. fas. at issue. It is not disclosed that he had any knowledge that Cobb was not in possession of the full amount until it became necessary, at the time of the audit for 1934, to make good the amount due the tax-collector by the sheriff. He may have acquiesced in or directed the disbursement of funds realized from fi. fas. other than those under consideration. What was paid out would be reflected in the "mutual account," if we are to accept as true that all necessary entries had been made by Cobb. That he did so is unchallenged. As between Smith and Cobb, the latter has accounted for all moneys he used for Smith's benefit or with his consent. The present suit does not set up any default except as is involved in the collections on fi. fas. specifically named in the suit. There is no evidence that Smith ever considered Cobb short with respect to any other fi. fas. Cobb's testimony is that Smith regarded him short to the amount of $1725.34, as represented by the specific fi. fas., and on one occasion had him to sign a note, as principal, for such amount, Smith signing as

surety, the note to be used at the bank to procure the money to discharge his obligation; but that he did not think the note was ever used. Even if Smith could be said to be estopped from claiming loss on account of the disbursements of moneys apart from the fund of $1725.34, this amount is not shown to be such that when deducted from the shortage of $1725.34 the difference would be in excess of the penal amount of the bond sued for.

But, as claimed by the plaintiff in error, did the conduct of Smith and Cobb as to the use of tax money derived from fi. fas. other than those involved in the present suit increase the hazard and risk of the surety on the bond of Cobb? The bond contains no requirement as to the method of handling the tax money, makes no provision as to how often the collections should be turned in, and is silent as to how the sheriff was to supervise the acts and doings of his deputy. How long he kept the respective collections, apart from those involved in the present suit, is not disclosed. When he paid out any moneys he did so with the understanding between him and Smith that he was to have credit accordingly. This is not the equivalent of dissipation of funds with no accounting to his superior. The amounts so paid out became a responsibility of Smith. The accountability of Cobb was thereby transferred to Smith, and Cobb was relieved to that extent. Whether Smith discharged the responsibility thus assumed became thereafter no concern of Cobb. The bond of Smith stood good for any shortage that might exist in his account with the tax-collector by reason of the unauthorized directions to his subordinate. Not having received tax money, but only a species of satisfaction from Cobb, Smith's resources to discharge his responsibility were obviously lessened. But if it be said that the hazard and risk of the surety on the bond of the sheriff were thereby increased, it does not follow that the surety on the bond of the deputy was similarly affected. On the contrary, as fast as Cobb relieved himself by transferring to Smith the responsibility and accountability for any part of his tax collections, the hazard and risk of the surety on Cobb's bond were thereby reduced. Apart from collections on fi. fas. involved in the present suit, it is not shown that Cobb owes Smith anything. Nothing done by Smith or Cobb as to those other collections affected the risk of the surety on Cobb's bond as to his accountability for such sums or as to

the total of $1725.34 represented by the fi. fas. in the present suit, and we are unable to see wherein the hazard and risk of the surety on the bond of Cobb were increased. Under the law and the evidence a finding in favor of the plaintiff was demanded, and the court did not err in rendering judgment accordingly.

*Judgment affirmed. Stephens, P. J., concurs.*

FELTON, J., concurring specially. I concur in the judgment of affirmance, but not for all the reasons stated in the majority opinion. I am of the opinion that the bond required by law to be given by a deputy sheriff to a sheriff is for the benefit of aggrieved parties, and not solely for the benefit of the sheriff; for the reason that any person aggrieved by certain conduct of the deputy sheriff has a right of action on the bond. If the sheriff has any right individually to sue on such a bond, it is as an aggrieved party, and not because he is the obligee. So in this case, if the sheriff had survived, and had not paid the deputy's shortage, he could have brought a suit for the use of the county. If he had brought such a suit, the bonding company could not, on the theory that its risk had been increased, have defeated a recovery by proving that the sheriff had authorized the deputy to expend some of the tax money. Such a defense would have nullified the bond and rendered null and void the purposes for which it is required. Likewise, if some taxpayer had paid to the deputy money for taxes, which the deputy squandered, and which he was required to pay again to the county, in a suit by the taxpayer on the deputy's bond the bond company could not plead a release because at another time this taxpayer borrowed from the deputy some tax money which he had never repaid. As I see this case, it is a suit by the administratrix of the deceased sheriff as an aggrieved party, as the sheriff would have been if he had lived and paid the shortage. It is the only theory on which the administratrix could maintain the suit, because if neither she nor the sheriff had paid the shortage the cause of action would not have survived to her. In such circumstances, if she had sought to sue as administratrix for the benefit of the county, the suit could not have stood, because nothing passed to the administratrix for which she could sue, and the county would have had to sue in its own name for a recovery. In such a suit by the county authorities, could the bond company claim a release? It could, if the bond were given to the sheriff

individually, and suit were brought by the sheriff individually; but the claim that it was given to him as an individual is not consistent with "any aggrieved person's" right to sue on it. Whether the bond company is released from liability as to an aggrieved party suing on such a bond, on the theory that he is estopped by his conduct, or whether the bond company had the right of set-off, are questions which are not raised by the pleadings.