FARMERS BANK OF BILLINGS, RESPONDENT, v. A. E. OETKER, APPELLANT.—31 S. W. (2d) 568.

Springfield Court of Appeals. September 25, 1930.

*Moore & Moore* for appellant.

*Gorden J. Massey* and *Fred W. Barrett* for respondent.

SMITH, J.—This case originated in a justice of the peace court in Christian county upon a petition filed with a note attached, signed by the defendant, dated February 23, 1927, for $980 payable on demand to the plaintiff at its office in Billings, Missouri, with interest from date until paid, interest to be paid semi-annually at the rate of eight per cent per annum, if not paid to be compounded annually. Demand protest and notice of non-payment waived by maker and endorser, with an agreement therein to pay an attorneys fee of ten per cent of the amount due if placed in the hands of an attorney for collection. The petition alleged that on March 3, 1927,

there was paid on said note the sum of $780 leaving a balance of $200 unpaid on the principal, and prayed for judgment for the unpaid balance of the principal, for the interest due, and for the ten per cent attorney's fee.

The defendant filed the following answer, caption omitted:

"Comes now defendant, Amos Oetker, and for answer to plaintiff's petition says that he signed a collateral note and placed same with collateral with said bank.

"That thereafter the collateral was surrendered and plaintiff agreed to charge the remainder due on said note to the account of Frank L. Stowe.

"That by reason thereof defendant is released from the payment thereof."

In the trial before the justice of the peace the plaintiff prevailed, and an appeal was taken to the circuit court, where at the February, 1929, term, in a trial before a jury, a verdict, directed by the trial court, was returned for the plaintiff, and judgment entered, and by proper steps an appeal was taken to this court.

The plaintiff to sustain the issues, introduced the note, showing the date, the amount, the credit thereon, its provisions for interest and attorney's fee, with the signature of the defendant and rested.

The defendant offered the collateral agreement attached to the envelope note, which provided that the maker had attached certain collateral security, but failed to describe it, except to say: "The above collateral has a market value of $3400." This agreement provided for supplying additional security if demanded, and that if the note were assigned the collateral might go with it, and provided for a sale of the collateral if necessary to extinguish the note. The collateral agreement was also signed by the defendant.

The theory of the defense was that the plaintiff agreed to release the defendant from liability on the note and to look to one Frank L. Stowe for payment of the balance due on the note. It was contended that by releasing the defendant and accepting Stowe as payor, that this constituted a novation, and the case was tried on that theory alone. The plaintiff contended that the answer did not sufficiently plead novation, but the defendant insisted that since the cause originated in a justice of the peace court that it was not necessary to definitely plead such an answer, and the trial court sustained defendant's contention in that respect.

After the evidence was introduced by both parties, the plaintiff submitted the following motion for a directed verdict:

"Comes now the plaintiff at the close of defendant's evidence and moves the court to instruct the jury that under all the evidence the verdict must be for the plaintiff in the sum of $200 the balance due on said note, together with interest thereon from February 23,

1927, at the rate of eight per cent per annum compounded annually, together with ten per cent of the amount thus found, as attorney's fee.''

This motion was sustained by the court, and the following verdict was returned:

"We, the jury, find the issues for the plaintiff in the sum of $200 principal and (illegible) $34 interest and attorney's fees in the sum of $234 as principal and interest and $23.40 attorney's fees." And in keeping with the verdict the court entered judgment for $257.40, being $200 for principal, $34 interest and $23.40 attorney's fee.

The defendant contends that the court erred in sustaining plaintiff's motion for a directed verdict, instead of submitting to the jury the question of whether an agreement was entered into wherein Stowe was substituted for the defendant and the defendant released from the payment of this debt. The contention was also made that the verdict, because of its peculiar wording, was insufficient upon which to base a judgment.

Regarding a novation, in 46 C. J., at page 573, we find this language:

"A novation may be broadly defined as a substitution of a new obligation for an old one which is thereby extinguished. More specifically, novation is the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. It is a mode of extinguishing one obligation by another—the substitution, not of a new paper or note, but of a new obligation in lieu of an old one— the effect of which is to pay, dissolve or otherwise discharge it.''

Again on page 575, section 3 we find this language:

"Novation may be effected in three ways: (1) By the substitution of a new obligation between the same parties, with intent to extinguish the old obligation. (2) By the substitution of a new debtor in place of the old one, with intent to release the latter. (3) By the substitution of a new creditor in the place of the old one, with intent to transfer the rights of the latter to the former.''

The courts of this State have spoken in plain definite terms as to what is necessary to establish a novation. This court is the case of Leckie v. Bennett et al., 160 Mo. App. 145, 159, 141 S. W. 706, used this language: "A novation by the substitution of a new debtor consists of a mutual agreement among three or more parties, the creditor, his immediate debtor, and the intended new debtor, whereby the liability of the last named is accepted in place of that of the original debtor and in full discharge of the original debt. Such contract will never be presumed, but must be clearly established by the evidence and must show a discharge of the original debt and an agree-

ment by the creditor as well as the other parties showing an intention to work a novation and discharge the original debt.''

This case, page 160, also holds that a novation, in order to be valid must be supported by a consideration, which is the discharge of the original debt. If the agreement does not or was not intended to operate as a release of the original debt, it is not a novation. The discharge of the original debt must be contemporaneous with and result from the consummation of an arrangement with the new debtor. To the same effect is the case of Hicksville Handle Co. v. Herb, 226 S. W. 63, 64, and cases cited. These cases also hold that a novation of a debt is never presumed, but must be clearly established, and the burden of proof is upon him who alleges the novation.

In the case of Emerson Brantingham Imp. Co. v. Sawyer, 210 Mo. App. 535, 242 S. W. 1007, Cox, Presiding Judge, speaking for this court used this language:

''To constitute a valid novation the interested parties must all agree to it at the time it occurs. Novation must rest upon contract and be clearly shown. It cannot be made binding by subsequent acquiescence or ratification without a new consideration or the existence of facts which will constitute an estoppel. The discharge of the original debtor must be contemporaneous with and result from the consummation of an agreement with the new debtor.''

We have carefully gone through the testimony in this case and the defendant does not claim that he was present at any time with the officers of the bank and Frank L. Stowe when such a contract or agreement was made. He testified that Stowe had told him that the banker had agreed to charge the amount to his account, and release the defendant, but he was not present at any such agreement. He said that later when the banker demanded that he pay the balance, he said to the banker that, ''Stowe told me you had taken this off the note and put it over on his account'' and the banker said ''Yes, I did, but—'' and that was all he could get out of him, and that at a later time when he and Stowe were together Stowe said to the banker ''I told you to put that on my account'' and the cashier said ''Yes, I know I did, but—.'' This conversation occurred after several months had passed since Stowe had told him that the bank had agreed to accept him for the debt instead of the defendant. There were some other circumstances in connection with the case that might tend to show that the bank had undertaken to accept Stowe for the debt, one circumstance was that when the defendant executed the note and put up the collateral, the money was obtained for the benefit of Stowe and placed to his credit, and that Stowe in a few days thereafter paid the $780 which was credited upon the note.

But taking the testimony most favorable to the defendant there is not a scintilla of evidence that there was a mutual agreement among the three at any time. There is not a particle of evidence that the three ever reached an agreement. In fact the evidence of the defendant and his witness, Stowe, is that the three were not together, and did not discuss the novation until after the plaintiff was making demand upon the defendant for payment. The burden was on the defendant to show the mutual agreement, and not only did he fail in that but his evidence clearly shows that there was no such agreement, so there was nothing for the trial court to do, in view of the cases heretofore cited, but to direct a verdict for the plaintiff.

We think there is not any merit to the point that the verdict was vague and uncertain and illegal in not fixing with certainty any amount due. A reference to the verdict will show that it is rather badly worded, and under some circumstances might be confusing, but in this instance the verdict was determined by direction of the court. The court had just told the jury what verdict he wanted returned, and the verdict showed it was an attempt on the part of the jury to comply with the directions, and the court's judgment was in keeping with the directions given to the jury and the verdict as returned.

It follows that the judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.