Nat Elowe, Appellee, v. Superior Fire Insurance Company, Appellant.

Gen. No. 41,107.

Opinion filed December 30, 1940. Rehearing denied January 15, 1941.

CLAUSEN, HIRSH & MILLER, of Chicago, for appellant.

MORTON L. ZASLAVSKY, of Chicago, for appellee; MORTON L. ZASLAVSKY and SAMUEL L. HOZMAN, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Nat Elowe brought suit against the Superior Fire Insurance Company to recover damages for a fire loss covered under a policy issued by defendant. Trial by the court without a jury resulted in findings and judgment for plaintiff in the sum of $350, from which defendant appeals.

The essential facts, as to which there is substantially no dispute, disclose that early in April, 1937, Andrew W. Wanek, an insurance broker or agent, took a one year membership in the National Health Club in Chicago, which entitled him to massages and steam baths. Elowe was employed in the club as a masseur. It was customary for members to give him a gratuity, or tip, of 25 cents after each massage. After Wanek had received one or two massages a discussion arose as to the purchase of fire insurance, and an agreement was made between the parties that in lieu of tipping Elowe after each massage for the ensuing year, Wanek would procure a fire insurance policy on Elowe's household furnishings and effects, for which the latter would not be required to pay the premium of $15. Subsequently, April 2, 1937, Wanek obtained the policy from defendant, mailed it to Elowe's home with a statement covering the premium, and shortly thereafter mailed Elowe a receipt acknowledging payment thereof. Elowe paid nothing for the policy, and although it was evidently Wanek's intention to pay the premium to defendant, no part thereof was ever paid by him. After a month, during which Wanek received one or two massages a week Elowe left his employment with the club and Wanek was unable to get in communication with him. He notified the insurance company that the premium had not been paid, and asked them to cancel the policy, which it refused to do. The insurance company had no knowledge of the agreement between Elowe and Wanek at any time prior to the loss. November 30, 1937, a fire occurred in the building where Elowe occupied an apartment,

as the result of which his furniture and wearing apparel were damaged. A public adjuster employed by Elowe made up an inventory of the damaged articles, which was introduced in evidence. The written notice of loss required by the terms of the policy was not furnished by Elowe, but he did call the agency through whom the policy had been issued and reported the fire. An adjuster for the insurance company was thereupon sent to Elowe's apartment, and after examining the damage said that ''everything was all right,'' but nothing further was done by the insurance company in regard to the loss.

These facts present the novel question in this State whether an insurance company is bound by a policy of insurance issued by a broker or agent who trades the policy in exchange for personal services to be rendered for his personal benefit by the insured, the insurance company having no knowledge of the arrangement. Other jurisdictions have considered the precise question. Couch, Cyclopedia of Insurance Law, vol. 2, sec. 537, p. 1646, announces the rule that ''an insurance agent ordinarily has no authority to accept anything other than money or an instrument calling for the payment of money for a premium, such as personal property, or professional services, or even to cancel his own indebtedness to the insured, or accept credit for merchandise on his account.''

The earliest decision to which our attention is called is *Hoffman v. John Hancock Mut. Life Ins. Co.*, 92 U. S. 161, 23 L. Ed. 539. That case involved a premium on a life insurance policy. The insurance broker accepted a horse in cancellation of a personal indebtedness, together with a note running to himself in payment of the premium, and issued a receipt acknowledging payment. Following the death of the insured, his widow brought suit upon the policy, and the trial court found for the defendant. The Supreme Court in affirming the judgment emphasized the fact that life insur-

ance is a cash business. ''Its disbursements are all in money, and its receipts must necessarily be in the same medium. This is the universal usage and rule of all such companies.'' Continuing, the court said (pp. 164, 165): ''Goodwin [the broker] had settled his own debt to Hoffman of $53.67, and had appropriated to himself Hoffman's note of $100. . . . If the agent had authority to take the horse in question, he could have taken other horses from Hoffman, and could have taken them in all cases. This would have carried with it the right to establish a stable, employ hands and do everything else necessary to take care of the horses until they could be sold. The Company might thus have found itself carrying on a business alien to its charter, and in which it had never thought of embarking. The exercise of such a power by the agent was liable to two objections: it was *ultra vires,* and it was a fraud as respects the company. . . . No valid contract as to the Company could arise from such a transaction. This objection is fatal to the appellant's case.''

In *Folb v. Firemen's Ins. Co. of Baltimore,* 133 N. C. 179, 45 S. E. 547, the agent accepted a suit of clothes and articles of wearing apparel in payment of the premium due on a policy of fire insurance. The court sustained the defendant's motion for judgment of nonsuit, which was affirmed on appeal, and said (pp. 180-181): ''It is clear that the agent had no authority to accept merchandise in payment of the premium. 'In the absence of any special agreement, the insurance premium must be paid in money. Unless objected to, currency, or even checks, drafts, or bills of exchange, will constitute payment; but the agent will not be presumed to have authority to accept merchandise on personal account. The distinction between the agent and his principal should be kept in view. The premium on a policy of insurance is the property of the latter, and not of the former. Where the agent

delivers a policy to the merchant with whom he has dealings and to whom he is indebted for goods due for the use of his family, and the premium by agreement is placed to the credit of the account, it is a fraud on the principal, and should a loss occur, the agent having failed to remit, the insurer will not be liable. The agent cannot appropriate to his own use the funds of his principal without a wrong being done the latter; and when merchandise is accepted in payment, or the premium is applied to pay a debt due to the insured, the latter becomes a party to the wrong, and the company will not be bound.' Ostrander on Insurance (2d Ed.) P. 295.''

A similar situation arose in *Cohen v. New Zealand Ins. Co., Ltd.*, 100 N. J. L. 110, 126 Atl. 417. There the agent had accepted shirts and underwear in payment of the premium on a fire insurance policy, and issued a receipt for such payment. The court directed a verdict for the defendant which was affirmed on appeal. The court pointed out that insurance, broadly speaking, is conducted on a money basis; that the insurance company's disbursements are all in money, and its receipts must necessarily be in the same medium or its equivalent to the company when taken, ''and this all parties dealing with or for the company are presumed to know.'' The court then called attention, as did the court in *Hoffman v. John Hancock Mut. Life Ins. Co., supra,* to the danger inherent in the practice of accepting merchandise in lieu of the premium payment, and said (pp. 111, 112): ''If the agent had authority to take the shirts and underwear in payment of the premium, he had a right to take it in coats or any other chattels. If he had authority to accept such a payment from the plaintiff, he had a right to accept it from every other person who desired to take out a policy, and thereby practically force the company into a mercantile business alien to its charter and in which it had never thought of embarking. Of course, that cannot be.

The agent had no such power, and his attempt to exercise it was a fraud as respects the company. . . . No valid contract as to the company could arise from such a transaction.''

In *Smith v. Hartford Fire Ins. Co.,* 120 Kan. 53, 242 Pac. 455, the agent accepted cancellation of a personal or private debt to the insured in payment of the premium on an automobile insurance policy. The insurance company refused to issue the policy, after learning of the nature of the agreement, and the insured then brought an action against the company for failure to complete the contract. In holding that plaintiff had no cause of action, the court said (p. 55): ''Obviously the scope of the agency did not warrant the taking of the company's money to pay his personal and private debts, and no other payment by plaintiff was contemplated. . . . Such an arrangement would operate as a fraud upon the company. In *Clingerman v. Pheasant,* 18 Pa. Co. Ct. 203, it was said: 'To sanction payment of a premium in a case where the agent had not already advanced the same to the company, by assuming to pay an individual debt of an agent, would be to introduce a principle subversive of good morals and common honesty and intending to sap the ability of companies to pay their legitimate losses.' ''

In *Turner v. Supreme Lodge K. P.,* 166 Okla. 386, 27 P. (2d) 612, the agent accepted a bull in payment of seven monthly premiums on a life insurance policy, and issued receipts therefor. The trial court sustained the motion of defendant for a new trial, which was affirmed on appeal. It was there said that ''a careful review of many cases indicate that the great weight of authority announces the rule that an agreement between the insurance agent and the insured whereby the former accepts personal property in satisfaction of the premium due on the policy does not bind the company in the absence of an express authorization to accept such personal property in lieu of

money for the premium and that no valid contract arises by such payment in the absence of consent, acquiescence, estoppel, or ratification by the company," citing cases hereinbefore discussed and numerous other decisions.

Again in *Equitable Life Assur. Society v. Cole,* 13 Tex. Civ. App. 486, 35 S. W. 720, the agent accepted a horse in addition to a small amount of cash in payment of the premium on a life insurance policy, and issued a receipt for full payment. Judgment in favor of plaintiff was reversed. The court there pointed out that "the doctrine cannot be established that because an agent is authorized to solicit insurance and forward applications for policies, and collect premiums in money, or even accept notes for deferred payments of premiums, he is therefore authorized to accept other kinds of property. The accepting of property in payment of indebtedness by agents authorized to collect is so much aside from the current of commercial affairs that one dealing with an agent, knowing him to be such, who makes payment to him in property, has the burden of showing that he was authorized to accept property in payment, or else that the principal ratified his act in so doing, or accepted the fruits of it. This cannot be shown by presumption alone."

In the recent case of *Allen v. Metropolitan Life Ins. Co.,* 179 Minn. 545, 229 N. W. 879, the agent had likewise accepted merchandise in lieu of money as a premium payment. Under a Minnesota statute (G. S. 1923, sec. 3757), an agent negotiating insurance is held to be "the company's agent for the purpose of collecting or securing the premiums therefor." After quoting this provision of the statute, the court said (p. 547): "But that implies no authority in the agent to accept payment in anything but money, unless he is authorized by the company to do so, as sometimes is the case with premium notes. He is not authorized to accept washing machines or other merchandise nor to agree that the premium or any part of it shall be ap-

plied on his own debt. No express authority of that kind is claimed. There can be no other, for 'it is an elementary principle, applicable alike to all kinds of agency, that whatever an agent does can be done only in the way usual in the line of business in which he is acting. There is an implication to this effect arising from the nature of his employment, and it is as effectual as if it had been expressed in the most formal terms. It is present whenever his authority is called into activity, and prescribes the manner as well as the limit of its exercise.' *Hoffman v. John Hancock Mutual Life Ins. Co.,* 92 U. S. 161, 164, 23 L. Ed. 539,'' and other authorities cited.

The rule in Illinois is not at variance with the foregoing decisions, although there are no cases precisely in point. In two cases where the premium on a policy was paid to the agent, partly in cash and partly in merchandise, the Supreme Court of this State indicated that if the cash payment had not been sufficient to satisfy the net claim of the company, the policy would not have been binding. The first of these is *Lycoming Fire Ins. Co. v. Ward,* 90 Ill. 545, where the court, in discussing the rule, said (pp. 549, 550) : ''It may be true that the amount which was received by Puschman out of plaintiff's saloon can not be regarded as a payment on the policy, but it does not appear, from the evidence, whether this sum was to be applied in payment of the policy in suit, or the other one contracted for at the same time, and as the amount paid in cash was more than enough to pay the premium on this policy, we see no ground for holding that the premium was not all paid in cash. But independent of this, Puschman was entitled to commissions for procuring the insurance, as a broker, and if he saw proper to take out his commissions in the saloon, we know of no reason or authority to debar him from so doing.''

The other case is *John Hancock Mut. Life Ins. Co. v. Schlink,* 175 Ill. 284, wherein the appellant contended that the agent, in the absence of express au-

thority, could not accept anything but cash in payment of the premium, or any part thereof. In discussing this contention, the court said (pp. 291, 292, 293): "It will be remembered that the premium in this case amounted to the sum of $63.70. Of this amount Ballance (the agent or broker) was entitled to retain, as his commission, seventy or seventy-five per cent, which would leave less than $20 going to the company. Ballance received $25 in cash,—enough to pay the company the amount it was entitled to receive and $5 in addition. The question then presented is, whether Ballance had the right to receive of the insured the amount which was going to him in anything but money. . . . In *Lycoming Ins. Co. v. Ward,* 90 Ill. 545, where the agent accepted a part of the premium in goods as a part of his commission, it was held the payment was binding on the company. Here Ballance was authorized to solicit the insurance from Schlink, and although the policy required the premium to be paid in cash, Balance had the right, so far as his commission was concerned, to waive the policy and accept his commission in property, if he saw proper to do so."

In both Illinois cases the agents or brokers obtained sufficient cash from the insured to pay the net amount of the premiums to the company, and received credits only for those amounts which represented their commissions on the sale. The implication arising from these two decisions is that the court would not have sanctioned payment of the entire premium through the exchange of merchandise or personal services. The rule in all jurisdictions to which our attention has been called, without exception, is generally to the effect that the acceptance by the agent or broker of something in lieu of money or its equivalent for insurance premiums renders the agreement invalid. The reasons therefor are inherent in the basis on which the insurance business is conducted, as the courts say, and

in the law of agency which does not sanction, by implication, the right of an agent or broker to enter into such a contract because, among other reasons, it would "introduce a principle subversive of good morals and good honesty, and intended to sap the ability of companies to pay their legitimate losses." (*Clingerman v. Pheasant,* 18 Pa. Co. Ct. 203.)

Plaintiff's counsel argue that since defendant company allowed Wanek 60 days in which to collect and remit premiums on policies which he sold, the extension of credit to him relieved insured of the obligation of paying for the policy. This contention is untenable, because insured remained primarily liable. To be sure, Wanek had 60 days in which to remit the premium, but only in the event that he collected it. (*Columbia Ins. Co. v. Loebs' Ins. Agency,* 187 Ill. App. 289.) If the insured did not pay, the company could either cancel the policy or allow it to remain in force until the premium was fully earned, and then bring suit for the collection thereof. But under no circumstances could the company collect from the broker or agent unless he had received payment. The primary obligation of the insured to pay the premium, remained unchanged regardless of the arrangement between the company and the agent. Counsel for the respective parties are not in accord as to whether Wanek was an agent or broker, and it is argued by plaintiff that the rule of law announced in the decisions hereinbefore cited is not applicable to brokers, but rather only to agents. The courts make no such distinction. In some of the cases the agreement to accept goods or services in lieu of cash was made by agents and in others by brokers, but the same rule of law is applied by the courts to both.

It is further contended by plaintiff that the company is estopped from denying the validity of the policy, because it permitted the same to be in force from April until November, 1937, and the trial court

was evidently of opinion that since Wanek was the agent who secured the policy for plaintiff, the receipt which he gave to Elowe was binding on defendant and would estop it from claiming that the policy was invalid. In several of the cases heretofore discussed the agent for the company issued a receipt acknowledging payment of the premium, as in the present case; nevertheless, the courts in each instance held that no valid contract of insurance had been entered into. Moreover, estoppel is an equitable doctrine which presupposes knowlege of the illegal or unauthorized act, and is founded upon equitable considerations for the promotion of justice. (*Hempstead v. Broad,* 275 Ill. 358.) And where silence is the ground of the estoppel it is essential that the party estopped should have knowledge of the facts and the other party be ignorant of the truth and be misled into doing that which he would not have done except for such silence. (*Fyffe v. Fyffe,* 292 Ill. App. 539; Bigelow on Estoppel, 467.) It must be conceded that in the case at bar the company knew nothing of the arrangement entered into between Wanek and Elowe, and therefore the doctrine of estoppel has no application to the circumstances of this case.

Neither would the fact that approximately 8 months intervened between the issuance of a policy and the loss by insured, alter the situation of the parties, because of Wanek's request that the company cancel the policy for nonpayment of premium. It is urged that the refusal or failure of the company to cancel the policy, as requested, affords further ground for estoppel. It seems to us, however, that the defendant was under no obligation to cancel the policy when it learned that plaintiff had failed to pay the premium, but was fully justified in advancing credit to plaintiff if it saw fit. The obligation to pay the premium is a continuing one. In the event that it is not paid at or after the issuance of the policy, the cancellation pro-

vision gives the insurer an option to cancel the policy or to permit it to remain in force until its maturity, with the right to then bring suit against insured for the unpaid premium. This constitutes a debtor-creditor relationship, and the company was free to allow this relationship to continue until the premium had been fully earned. Defendant chose the latter course, and by so doing it neither condoned nor ratified the agreement between Wanek and Elowe as to payment of the premium in personal services, because it had no knowledge thereof, nor did it subject itself to the charge of estoppel.

The remaining contention that failure of plaintiff to furnish proof of loss, as required by the terms of the policy, bars the right of recovery, is of secondary importance, in view of the conclusion hereinbefore reached, and therefore need not be discussed.

We think the court erred in finding in favor of plaintiff and entering judgment accordingly. For the reasons set forth, the judgment of the municipal court is reversed and judgment is entered here in favor of defendant, and against plaintiff, and for costs.

*Judgment reversed and judgment here in favor of defendant and against plaintiff, for costs.*

SCANLAN and JOHN J. SULLIVAN, JJ., concur.