HUTCHESON & COMPANY, a corporation, Plaintiff-Respondent,

v.

PROVIDENCE – WASHINGTON INSURANCE COMPANY OF PROVIDENCE, RHODE ISLAND, Defendant-Appellant.

No. 7876.

Springfield Court of Appeals.

Missouri.

Nov. 3, 1960.

Motion for Rehearing or Transfer Overruled Dec. 30, 1960.

Mann, Walter, Powell, Burkart & Weathers, Springfield, for defendant-appellant.

Pufahl & Collins, Richard C. Collins, Bolivar, for plaintiff-respondent.

RUARK, Judge.

This is an appeal by the insurance company from an adverse judgment in a suit on a fire policy. The fact of the fire and the amount of pro rata liability, if any, is agreed. The principal questions are whether there was a valid contract of insurance and whether the defendant company effectively cancelled the policy prior to the fire.

One Beaman operated an insurance agency business in Bolivar, Missouri. He was agent for a number of companies, one of which was the defendant, Providence-

Washington Insurance Company. His authority from defendant empowered and authorized him to receive and accept proposals for insurance, to collect and receipt for premiums on insurance collected for the company, and to retain his commissions out of the collected premiums. He was required to render monthly account of amounts due the company and to remit amounts so shown to be due within forty-five days after the month for which the account was rendered. The plaintiff (now respondent), Hutcheson & Company, operated a retail furniture store.

On February 11, 1955, Beaman counter-signed and delivered to Hutcheson a fire insurance policy on the stock of merchandise. At that time the plaintiff was willing to pay and offered to pay the premium, but Beaman was indebted to Hutcheson on his, Beaman's, personal account, so it was agreed between them that the amount of premium would be credited to Beaman's account. Accordingly the premium was not paid by cash or check, but instead Hutcheson issued to Beaman its receipt showing:

"Received from John Fred Beaman $79.35 for ins. Policy—Mdse.

| | |
|---|---|
| Amount of account | $746.25 |
| Amount paid | 79.35 |
| Balance due | $666.90" |

Subsequent to the above transaction it was discovered by the insurance companies that the Beaman Agency was in financial difficulties, and on March 11, 1955, one L. B. Gribble, agent of one of the companies involved, took an assignment from Beaman of all Beaman's expiration records. Gribble purported to take as trustee for "all companies licensed in The Beaman Insurance Agency." By this assignment the expiration records were to be sold and the proceeds to be applied to the indebtedness due from Beaman to the various companies. In case the expirations could not be sold for enough to pay the indebtedness, no recourse was to be had on Beaman. Beaman's assignment listed indebtedness to all the companies in the total amount of $16,244.77.

Included in this list was the supposed indebtedness of Beaman to the defendant, Providence-Washington Insurance Company, in amount of $319.87. This last figure actually included the sum of $79.35 which had supposedly been collected on the Hutcheson premium, but the $319.87 was a bare figure on a list. There was no designation of what items it represented. Gribble in turn (on March 30, 1955) contracted to sell the expiration records to one Saxton for the (then) total sum of $15,000, to be paid $5,000 down and the balance in percentages of premiums collected. (The amount finally paid by Saxton for the expirations was less than 50% of the amount which had been originally agreed because, on audit, it was found that a considerable number of Beaman's supposed policies were fictitious.) The assignment provided that Saxton would not be liable for any return of commissions arising out of the Beaman Agency. On April 4, 1955, Gribble notified all the companies, including the defendant, Providence-Washington, concerning the transaction. His letter enclosed a copy of the assignment and bill of sale to Saxton, called for receipt of all company accounts, and requested acknowledgment of agreement. By letter of April 13, the Providence-Washington notified Gribble that "we are satisfied with the arrangements as outlined. You may accept this as evidence of our agreement. As soon as possible we will forward to you a Statement of Accounts for this agency through March 31, 1955."

In the meantime, on March 31, 1955, the Providence-Washington Company sent Hutcheson a formal notice of cancellation, to take effect as of April 5, 1955. On April 2, 1955, the plaintiff acknowledged receipt of notice of cancellation and stated, "I think that we are entitled to know what the reason is, because we made settlement with Mr. Beaman for this policy." On April 4, defendant replied to plaintiff's letter with the statement that the premium had not been paid in cash or by check but by plaintiff's credit of Beaman's personal

account, and since such transfer of account did not constitute payment under the insurance contract it was cancelled for non-payment of premium. On May 17, the defendant wrote to Gribble, the trustee, that the items had been verified and the Hutcheson account which appeared on the books for the statement of April 1 had been cancelled and that this premium should be deleted in order to find the balance due. The amount was so deleted and in the final disbursal of funds the defendant did not receive any pro rata portion of the final amount to represent the Hutcheson premium. The fire occurred on December 26, 1955.

■ It is the law of Missouri, as well as numerous other jurisdictions, that an insurance agent, although authorized to collect premiums, has no apparent authority to accept merchandise or anything other than the equivalent of money, or to cancel the agent's private indebtedness, in lieu or in payment of the premiums required by the insurance contract. Fernan v. Prudential Ins. Co. of America, Mo.App., 162 S.W.2d 281; Kahn v. Philadelphia Fire & Marine Ins. Co., Mo.App., 108 S.W.2d 457; Gibson v. Texas Prudential Ins. Co., 229 Mo.App. 867, 86 S.W.2d 400.[1] The reasons given are that the insurance business is a cash business and that the agent has authority to act "only in the way usual to his line of business," and any transaction outside this line of business by which a third party obtains a contract or other benefit from the principal is a fraud on the company, even though the third party intended no wrong. Hoffman v. John Hancock Mut. Life Ins. Co., 92 U.S. 161, 23 L. Ed. 539; Mechem on Agency, vol. 2, sec. 2137, p. 1710, sec. 2138, p. 1715; see Annotation 93 A.L.R. 654, 658.[2] The respondent does not seriously dispute the foregoing, but it suggests that if the agent actually pays the premium over to the company, then the company, having actually received the premium, is in no position to complain. This we think is true (see authorities first cited supra), but we believe that it follows because the insured, in engaging with the agent to do that which was beyond his actual and apparent authority, and which was actually antagonistic to the interests of the principal, has made the insurance agent *its* agent for the purpose of transmitting cash or equivalent to the company. Kahn v. Philadelphia Fire & Marine Ins. Co., Mo.App., 108 S.W.2d 457, 461, supra; Turner v. Supreme Lodge, K. P., 166 Okl. 286, 27 P.2d 612, 617, 93 A.L.R. 647; Appleman, Insurance Law and Practice, vol. 14, sec. 8009, p. 276. And if the insured's agent actually pays the company, the conditions for the contract have been fulfilled. In this instance, however, the agent never paid the principal, and the principal never actually received anything for or in lieu of the premium. And it should be noted that there was not shown any agreement, course of conduct and accounting or arrangement whereby the principal took the agent for the debt; nor was it shown that the agent was charged upon the books of the insurer as personally owing the premium or "nets" to the company.[3]

1. See also Hoffman v. John Hancock Mut. Life Ins. Co., 92 U.S. 161, 23 L.Ed. 539; Turlington v. Metropolitan Life Ins. Co., 193 N.C. 481, 137 S.E. 422; Elowe v. Superior Fire Ins. Co., 307 Ill.App. 569, 30 N.E.2d 953; Turner v. Supreme Lodge, K. P., 166 Okl. 286, 27 P.2d 612, 93 A.L.R. 647; 29 Am.Jur., Insurance, sec. 541, p. 846; 3 C.J.S. Agency § 281a, p. 220; 44 C.J.S. Insurance § 272, p. 1088; Appleman, Insurance Law and Practice, vol. 14, sec. 8004, p. 265, vol. 15, sec. 8460, p. 294.

2. As to dual or antagonistic agency without knowledge of the principal, see Mechem on Agency, vol. 1, sec. 1189, p. 867, et seq.; sec. 1206, p. 881; vol. 2, sec. 2137, p. 1610; sec. 2138, p. 1715, 2 Am. Jur., Agency, sec. 262, p. 211; Williston on Contracts, vol. 5, sec. 1532, p. 4298; Harry M. Fine Realty Co. v. Stiers, Mo. App., 326 S.W.2d 392.

3. See Nall v. Great Northern Ins. Co., Mo.App., 135 S.W.2d 392, and cases at loc. cit. 396; Vail v. Midland Life Ins. Co., Mo.App., 108 S.W.2d 147, 151; H.

■ It is respondent's contention, however, that, by agreeing to enter into the composition with the creditors of Beaman, the company lost its right to deny that the premium had been paid. We have some difficulty grasping its theory, but it is evidently based upon the proposition that in agreeing to the arrangement some sort of novation or ratification took place. The statement in respondent's brief is that "the assignment by the agent to the trustee paid all of the indebtedness of the agent to the companies." This is true. That a composition wherein all the creditors agree to accept their pro rata part in full payment of the indebtedness is binding upon those who agree should require no citation of authority.[4] But where the reasoning shifts gears is in assuming that an assignment in full payment of *Beaman's* debts paid the *insured's* debt, or, to be more exact, the insured's unpaid premium. In order for it to have discharged the insured's obligation there must have been an acceptance of Beaman in lieu of Hutcheson as the obligor in respect to insured's premium either by way of novation, or something analogous thereto, or by ratification of Beaman's unauthorized act.

■ ■ Of course there can be no novation without the knowledge and consent of the creditor. 66 C.J.S. Novation § 18b, p. 701; Negbaur v. Fogel Const. Co., Mo. App., 58 S.W.2d 346, 352; Di Franco v. Steinbaum, Mo.App., 177 S.W.2d 697. And the novation is never to be presumed but must be clearly established. The burden is upon him who alleges it. Farmers' Bank of Billings v. Oetker, 224 Mo.App. 664, 31 S. W.2d 568; Hicksville Handle Co. v. Herb, Mo.App., 226 S.W. 63. The first essential in ratification is that the principal have full knowledge of all the material facts at the time he is charged with having accepted the transaction as his own. State ex rel. Mut. Life Ins. Co. of Baltimore v. Shain,

339 Mo. 621, 98 S.W.2d 690; King v. Mut. Life Ins. Co. of Baltimore, Mo.App., 105 S.W.2d 994; Hamilton v. Hecht, Mo.App., 283 S.W.2d 894(10); Scrivner v. American Car & Foundry Co., 330 Mo. 408, 50 S.W.2d 1001, 1010; see 44 C.J.S. Insurance § 273a, p. 1089; Wilks v. Stone, Mo.App., 339 S.W.2d 590. And the burden of proving such ratification is on the person claiming it. 3 C.J.S. Agency § 319(2), p. 267; Seibel v. Harry S. Surkamp Inv. Co., Mo. App., 328 S.W.2d 179, 186; Badger Lumber & Coal Co. v. Pugsley, 227 Mo.App. 1203, 61 S.W.2d 425, 429.

■ ■ There is nothing in this transaction which shows, or from which it can be inferred, that at the time the company agreed to the arrangement for composition it had any knowledge that the account between Beaman and Hutcheson had been transferred into and made a part of the total supposedly due from Beaman to Providence-Washington. A principal is not to be charged with the knowledge of the agent when the agent is acting beyond the scope of his authority and adversely to the principal and for his and another's purpose. Newco Land Co. v. Martin, 358 Mo. 99, 213 S.W.2d 504, 511; McGee v. Capital Mut. Ass'n of Jefferson City, Mo.App., 116 S.W.2d 204. As a matter of fact, the acceptance of "the arrangement" contemplated some kind of audit or checking of accounts. Beaman had made an assignment to Gribble, the trustee, in which certain total amounts due the companies from Beaman were listed. This was obviously taken from Beaman's records. At least there is no evidence that any of it came from the Providence-Washington. Gribble forwarded a copy of the agreement and in his accompanying letter called for a rendering of final company accounts. The company answered by stating that it was "satisfied with arrangements as outlined" and agreed to forward a statement of accounts as soon

---

W. Eddy Insurance Inc. v. National Union Fire Ins. Co,. Mo.App., 94 S.W.2d 1062.

4. See 11 Am.Jur., Composition with creditors, sec. 4, pp. 235–6.

as possible. At some time, we do not know when, Providence-Washington discovered the item fraudulent (as to it) in the total shown on the original assignment and notified the trustee to delete the amount of the Hutcheson premium from the amount due from Beaman to the company. The company never received any pro rata payment on account of the Hutcheson premium and there is no .evidence that it accepted or agreed to accept it as an obligation due the company after it discovered the facts concerning it. We fail to find in this any support for the theory that the appellant accepted or ratified the transaction between Beaman and Hutcheson.

■ As to respondent's contention that the policy was not effectively cancelled because the notice of cancellation stated that "any return premium due under this policy, if not tendered herewith, will be refunded as soon as practicable," whereas the policy required that the policy might be cancelled by the giving of five days' written notice with or without tender of the excess of paid premium and that "notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand": The policy stated that it was in consideration of the premium specified. Since, as we have held, no premium was paid, tender of return of premium was not a prerequisite to cancellation. Gruen v. Standard Life & Accident Ins. Co. of Detroit, Mich., 169 Mo.App. 161, 152 S.W. 407; Smith v. Ohio Millers' Mut. Fire Ins. Co., 325 Mo. 51, 26 S.W.2d 962, 968. Hutcheson was informed by letter of the exact reason for cancellation. It was not misled. There was no estoppel and there was no contract. See Fernan v. Prudential Ins. Co. of America, Mo.App., 162 S.W.2d 281, 286, supra.

For the foregoing reasons the judgment appealed from must be reversed and judgment rendered for the defendant. It is so ordered.

STONE, P. J., and McDOWELL, JJ., concur.